[Civil No. 2451.   Filed April 19, 1926.]

[245 Pac. 270.]

LAURA WHITE, Administratrix of the Estate of WILLIAM R. WHITE, Deceased, Appellant, v. ARIZONA EASTERN RAILROAD COMPANY, a Corporation, Appellee.

1. RAILROADS—NEGLIGENCE OF RAILROAD CANNOT BE PREDICATED ON OBSTRUCTION OF VIEW BY TREES NOT LOCATED ON RIGHT OF WAY AND CONTROLLED BY ANOTHER.—Negligence of railroad for death from collision at crossing cannot be predicated on the alleged obstruction of view by trees growing near crossing, where such trees were located off of railroad highway and were planted and controlled by another.

2. RAILROADS.—In absence of contrary showing, court will presume that operators of locomotive performed statutory duty of ringing bell on approaching crossing.

3. RAILROADS—WHERE EITHER WHISTLE IS BLOWN OR BELL RUNG, NEGLIGENCE CANNOT BE PREDICATED ON FAILURE TO GIVE OTHER.— Where signal of approach of train to public crossing is given, either by blowing whistle or ringing bell, negligence of railroad cannot be predicated on failure to give the other.

4. RAILROADS — EVIDENCE AND ADMISSIONS IN COMPLAINT FOR DEATH AT CROSSING HELD TO SHOW BELL WAS RUNG.—In action for death from collision at railroad crossing, evidence and admissions in complaint *held* to show that statutory warning of ringing of bell was given.

5. RAILROADS—PLAINTIFF ALLEGING SPECIFIC ACTS OF NEGLIGENCE BY RAILROAD MUST PROVE THEM OR ONE OF THEM.—Where plaintiff, in action for death at railroad crossing, relied on specific acts of negligence, it was incumbent on her to prove them or one of them.

6. RAILROADS—EVIDENCE AS TO SPREAD OF TREES OBSTRUCTING VIEW AT CROSSING HELD INADMISSIBLE AS NOT BASED ON CONDITIONS PRESENT AT TIME OF ACCIDENT.—In action for death from col-

1. Negligence of railroad company in permitting obstructions on its right of way which obscure view of track from highway crossing, see note in 12 L. R. A. (N. S.) 1067. See, also, 22 R. C. L. 995.

3. Duty of railroad company as to giving of signals at highway crossings, see note in L. R. A. 1915E 833.

lision at railroad crossing, question as to how spread of certain trees, alleged to have obstructed deceased's view, would be with reference to a man riding along in a truck, *held* properly excluded, trial having occurred three years after accident, as not being based on conditions present at time of accident.

7. RAILROADS—FAILURE OF TRUCK DRIVER APPROACHING OBSTRUCTED CROSSING TO STOP, LOOK, AND LISTEN, OR TO HAVE TRUCK UNDER CONTROL, HELD WITHOUT LEGAL EXCUSE.—Failure of truck driver approaching railroad crossing, knowing of obstructed view by reason of certain trees, to stop, look and listen, or at least reduce his speed so as to have been able to keep truck under control, *held* without legal excuse.

See (1) 33 Cyc., p. 934, n. 13.   (2, 3) 33 Cyc., p. 960, n. 53, p. 1069, n. 92.   (4, 5) 33 Cyc., p. 1064, n. 55, p. 1091, n. 55.   (6) 33 Cyc., p. 1084, n. 10.   (7) 33 Cyc., p. 1018, n. 78.

APPEAL from a judgment of the Superior Court of the County of Gila. C. C. Faires, Judge. Affirmed.

Messrs. Cox & Moore, for Appellant.

Mr. Charles L. Rawlins, for Appellee.

ROSS, J.—This is the second time that this case has been before us. 26 Ariz. 590, 229 Pac. 101.

A collision between a truck, driven by the deceased, and an engine of the defendant railroad company, at a crossing of said company, forms the basis of this action. Such collision occurred on July 27, 1922. After the formal parts, including plaintiff's representative capacity, the cause of action is set out in the complaint as follows:

"The defendant negligently permitted green trees to grow at or near said crossing, which obstructed the view of trains approaching said crossing and for the reason plaintiff's intestate had his view obstructed

7. Duty of driver of automobile as to stopping, looking and listening at railroad crossing, see note in 46 L. R. A. (N. S.) 702. See, also, 22 R. C. L. 972.

when approaching said crossing, and the servants of defendant in charge of said locomotive negligently backed said locomotive on to said crossing without blowing the whistle of said locomotive and without giving other adequate warning of its approach to said crossing, and by reason of such inadequate warning and by reason of the view being obstructed as aforesaid by green trees, there was a collision between the truck being driven by plaintiff's intestate and the said locomotive, in which accident and collision plaintiff's intestate was killed. . . .''

In addition to a general denial the defendant alleged in its answer:

''That the injury, if any, resulting in the death of plaintiff's intestate, was caused solely and entirely by intestate's own negligence.''

After plaintiff had closed her case the defendant made a motion for a directed verdict on several grounds, one of which was that the plaintiff had wholly failed to prove any act of negligence on defendant's part, and another that plaintiff had wholly failed to prove the negligence alleged; and the motion was granted. The granting of this motion and the ruling out of certain evidence are assigned as errors.

The evidence offered and admitted in support of plaintiff's case was to the following effect: The place where the accident occurred was at Kaiser's crossing, between Globe and Miami, about two miles from the latter and four miles from the former place. The railroad track approaches the highway at or near a right angle, and at that point has the general direction of north and south, while the highway's course is generally east and west, and both are, as we understand, on practically a level grade. Along the easterly approach of the highway were some poplar trees, planted and cared for by the Inspiration Copper Company, we assume to shade and ornament the highway.

These trees were about ten feet from the paved part of the road (width not given), opposite to each other at a hundred feet apart along the highway, and the first ones were approximately twenty-five feet from the railroad track and off the right of way of defendant. The spread of the trees was from ten to fifteen feet, and their height fifteen feet. The deceased was familiar with the crossing, having driven a truck over it several times before. On this day, at noon, he was going west from the direction of Globe towards Miami, driving a large truck, and the engine with which he collided was proceeding north and towards Globe. The engine was backing and traveling about twenty miles an hour, and the truck was traveling about fifteen miles an hour. The only witness who testified to seeing the accident was about one hundred and fifty to one hundred and seventy-five yards up the railroad track, where the engine was moving, from the crossing. And he states that when he first saw the truck it was fifty feet or a little more from the track; that it showed no signs of slacking up, going about the same all the time until it ran into the engine; that he was in full view and could see the lower part of the truck plainly, but at times could not see the top when it passed the trees, but could see it coming. Using the witness' language:

"As this engine was approaching the crossing, we were also looking in that direction, there was a great big red truck, and we noticed they were getting closer together; then we noticed if one of them didn't stop there was sure to be an accident; then of course all of our attention was turned that direction, and just at that moment the engine got in the crossing, and the truck hit right about the cab, right about the center of the engine. The engine went on about 60 yards, and then stopped. . . ."

The witness' testimony as to signals is as follows:

"The crossing signal was not given by the engine at any time, except the bell, I would not be so sure about; I know the whistle was not sounded."

Witness saw a service car, containing seven people, stop on the Miami side of the track at the engine's approach. The weather conditions were not such as to interfere with one's sight or hearing.

After deceased cleared the trees (twenty-five feet from the track) it is unquestioned he had a clear and unobstructed view along the track, in the direction the engine was coming, for at least one hundred and fifty to one hundred and seventy-five yards.

After the accident it was discovered that the emergency brake on the truck was on, but no one testified to seeing deceased throw it on, nor as to whether it was defective and insufficient to stop the truck or retard its speed.

' Recurring to the complaint we find the derelictions charged against defendant to be: (1) Negligently permitting green trees to be at or near crossing, which obstructed plaintiff's view of train at crossing; and (2) negligently backing engine on to crossing without blowing the whistle, and without giving other adequate warning of the engine's approach.

The first act of negligence charged was not supported by the evidence. On the contrary, the evidence is that the trees along the public highway were planted and controlled by another, and were entirely off defendant's right of way. The defendant had no control over them, and could not remove them, and even though they may have obstructed the view of the deceased, defendant could not be blamed therefor. *New York Cent. & St. L. R. Co.* v. *Kistler,* 66 Ohio St. 326, 64 N. E. 130.

The evidence does show that the whistle was not blown, and to that extent supports the complaint.

And if such omission is by the statute made negligence, regardless of any other warning that may have been given, the court was in error in directing a verdict. The complaint alleges that no "other adequate warning" was given, but admits a warning of some kind was given and denies its adequacy. We think the allegations of the complaint warrant this construction.

There is no evidence that the bell was not rung, the witness stating as to that that he "would not be so sure." If, as a matter of fact, the defendant's servants in charge of the engine rang the bell "from a point 80 rods from the crossing all the way up to it," they fully complied with the statutory requirements in the matter of giving warning signals. *Arizona Eastern R. Co.* v. *Cox,* 27 Ariz. 469, 233 Pac. 1102. And in the absence of a contrary showing we will presume the enginemen performed their duty in that regard. Since the statute imposes the duty of giving warning of the approach of a train to a public crossing either by blowing the whistle or ringing the bell, when one of these is given as the statute requires, negligence cannot, as plaintiff seems to think, be predicated upon the failure to give the other.

We conclude from the admissions in the complaint and from the evidence that the statutory warning of ringing the bell must have been given, and it follows that the plaintiff did not establish either of the acts of negligence alleged; and, since she relied upon specific acts of negligence, it was incumbent upon her to prove them or one of them.

The plaintiff was permitted to introduce evidence of the location, size, height and spread of trees on the highway along which deceased approached the crossing, but the court sustained an objection to a question as to "how their spread would be with refer-

ence to a man riding along in a truck and where their spread would strike him.'' This ruling is assigned as error.

If it be granted that the evidence sought to be elicited was material to the issues, the question was improper as not being based upon the conditions present at the time of the accident. The trees most likely had grown in the three years intervening between the accident and the trial, and had greatly increased their spread, and, as trucks are different in height, so might the vision be differently affected. The question should have been predicated upon the particular truck deceased was driving, or one of the same size and height, and upon the spread of the trees at the time of the accident. If, however, the crossing was made more dangerous because the trees growing along the highway obstructed deceased's vision, the fact afforded good reason for his being, as he was in full possession of that knowledge, careful and cautious in going upon the crossing, and his failure to take notice of that known danger by stopping, looking and listening, or at least by reducing his speed so as to be able to keep the truck under control, is without legal excuse. It was a clear day, and there is no question but that deceased as soon as he cleared the trees could by looking have seen the engine coming in the direction of the crossing, and, had he kept the truck under control, as it was his plain duty to do, could have stopped before running into the engine as he did.

The condition of the brake on the truck after the accident probably tells the story of why he ran into the engine. Its condition indicated that he might have tried to prevent the collision, as the brake had been thrown on. It evidently was not working, or he did not put it on in time. If so, those were condi-

tions over which defendant had no control, and could not be held liable for damages occasioned thereby.

It is not contended that the crossing was of such a dangerous character as to require any other precautions than the statutory warning of blowing the whistle or the equivalent thereof. The crossing was not in an urban settlement, but in the country, and the rate at which the engine was traveling has not been and could not be made a ground of negligence. Its locality and character were not such as to impose the duty upon defendant of stationing a flagman there to guard and warn the public, and no such contention is made. 2 R. C. L. 1205, § 41. Indeed, if one had been there it is inconceivable that he could have given a better warning of the approach of the engine than the warning given by the engine itself. If deceased could not see the engine and the service car with its human freight waiting on the opposite side of the crossing for the engine to pass, in all probability a flagman could not have averted the collision.

We are of the opinion that the court did not err in granting the motion for an instructed verdict on the grounds that plaintiff did not make out her case as alleged, and the judgment thereon is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.