[No. 25148.   Department One.   December 18, 1934.]

ALYDA TeSELLE, *as Administratrix, Appellant,* v. WILBURN H. TERPSTRA, *Respondent.*[1]

*Eugene D. Ivy* and *Cheney & Hutcheson,* for appellant.

*Morthland, Foster & Olson,* for respondent.

MILLARD, J.—Defendant, a farmer in the Moxee district near Yakima, owned a 1925 model T Ford truck, which he used in the business of trucking and hauling. In October, 1932, he entered into an agreement with A. H. TeSelle to haul the latter's furniture in that truck from Lynden to TeSelle's home in

[1] Reported in 38 P. (2d) 379.

Yakima county. When ten miles south of Bellingham, defendant lost control of his truck, and it crashed into a bridge. As a result of that accident, the furniture was destroyed, and TeSelle, who was riding in the truck with defendant, sustained injuries which caused his death ten days later.

The administratrix of the estate of the deceased brought this action to recover for the death of her husband and also to recover for loss of the furniture. The cause was submitted to the jury under two rules of negligence: Ordinary negligence as to the furniture and gross negligence as to the decedent. From judgment upon a verdict in favor of plaintiff in the sum of six hundred dollars for the furniture and denying recovery for the death of TeSelle, plaintiff appealed.

The facts are as follows: At the time of the accident out of which this action arose, respondent was twenty-four years old. He had resided in the Moxee district, near Yakima, about nine years, during which period he was acquainted with the TeSelle family. Respondent was a farmer. Incidental to the business or occupation of farming, he was also engaged in the hauling business. The one truck owned by respondent was a 1925 model T Ford, purchased by him in July, 1932 (three months prior to the accident), for sixty-five dollars.

The TeSelles formerly resided in Lynden, where they owned a house in which their furniture and other household goods were located. TeSelle agreed to pay twenty-five dollars to respondent to haul the former's furniture from Lynden to TeSelle's home in Yakima county. Operating his truck, and unaccompanied, the respondent drove from Yakima to Lynden, where he was met by TeSelle, who went to Lynden two or three days ahead of respondent. On October 3, 1932,

with TeSelle's assistance, respondent loaded the furniture onto his truck. The two then started for Yakima, respondent operating the truck and TeSelle sitting in the seat on the right-hand side of respondent driver.

There is no showing, not the slightest evidence, that it was a part of the arrangement that TeSelle would accompany the respondent on the return trip. No part of the consideration of twenty-five dollars for hauling the furniture was for the carriage of TeSelle. Counsel for appellant so admitted, as follows, in open court:

"The trip as far as the evidence shows, included taking over there both of them, loading the furniture on the truck and both of them coming back on the truck. Not a passenger for hire, but a joint transaction. This is particularly a mutual enterprise, both of whom had an interest in the enterprise. The Court: Your view is that he was to come back with him as helper? Mr. Cheney: That he was to come back with him, that he was going over there and they were going to load this furniture together and Mr. TeSelle was coming back with Mr. Terpstra. The record may show that we disclaim absolutely that there was any element of a passenger for hire, directly or indirectly. That can be eliminated from the case right now. No such claim was made or will be made."

TeSelle did not accompany respondent on the trip from Yakima to Lynden. He helped load the furniture at Lynden, and accompanied respondent on the return trip from Lynden. There is no evidence or reasonable inference from evidence showing more than that an agreement was made by TeSelle with respondent to haul the former's furniture from Lynden to Yakima for a consideration of twenty-five dollars; that the contract was limited to the hauling of the household goods alone; and though TeSelle accompanied respondent on the return trip, his status was

not that of a helper or passenger for hire, but was that of licensee or guest. Nor is there any evidence that respondent was licensed to carry passengers.

When about ten miles from Bellingham, the truck collided with a bridge, with the result described above.

■ Counsel for appellant contend that, as TeSelle was not a guest, the rule of ordinary negligence applies, therefore the court erred in submitting the cause to the jury, as to the death of TeSelle, under the rule of gross negligence.

That TeSelle was a mere guest, riding in the truck at his own invitation, but with the consent of respondent driver, and for his own benefit and convenience, clearly appears. There is no evidence, not a scintilla, that TeSelle's status was other than that of a mere guest.

A person who hires a truck, not licensed to carry passengers, to transport his furniture, and who, with the consent of the driver, and without any agreement to pay, takes a seat with the driver to make the trip with the furniture, is a mere guest, to whom there is no liability in the absence of gross negligence. *Klopfenstein v. Eads,* 143 Wash. 104, 254 Pac. 854, 256 Pac. 333.

■ Counsel for appellant next urge as error the refusal of the trial court to charge the jury that respondent was guilty of gross negligence, as a matter of law; and that the only question for the jury's determination was whether such gross negligence was the proximate cause of the accident, and the amount of recovery to which appellant was entitled if such gross negligence was the proximate cause of the accident. It is argued that respondent was not exercising any care for the safety of his passenger, and was guilty of gross negligence, as a matter of law, in that the truck had defective gears, that the truck was

out of gear, and respondent knew it, when he passed a given point from which he proceeded around a curve and down a steep hill with the truck completely out of control. That is, with full knowledge of the defective condition of his truck and the dangers of the road ahead, and in flagrant disregard of the speed limit of fifteen miles an hour for a blind curve such as the one at the top of the hill, respondent started down the hill at a speed of approximately thirty miles an hour and crashed into a bridge.

It should be borne in mind that there was evidence contradictory of the evidence on which appellant relies to sustain her position. That being so, a question of fact was presented for the determination of the jury, and it would have been error had the court held, as a matter of law, that respondent was guilty of gross negligence.

There was competent evidence refuting that relied on by appellant that the gears of the truck were badly worn and that the truck had no brakes. There is testimony that the truck was not out of gear at the point on the highway argued by appellant as the danger point or the place from which respondent's truck started on its disastrous trip towards the bridge. Showing was also made of lack of knowledge, or that which should have charged him with notice, on the part of respondent of any defect in the transmission. The violation of the statute limiting speed of vehicles to fifteen miles an hour when going around a curve where the operator's view is obstructed, was caused by his truck, if his testimony is to be believed—that was for the jury—having gone out of gear, and was not a matter of respondent's own volition.

Clearly, it was a question of fact whether respondent was guilty of gross negligence. That question was properly submitted by the court to the jury.

78

Counsel for appellant assign as error the giving of the following instruction relative to the rule of emergency:

"You are instructed that when one finds himself in a position of sudden peril or emergency, the law does not hold him to responsibility in the same degree for sound judgment and proper action as under other circumstances. The fact that he has to act suddenly in an emergency, without an opportunity for deliberation, is a circumstance to be taken into consideration in determining what is ordinary and slight care in that situation."

To the giving of the instruction, the following exception was taken:

"Plaintiff excepts to the giving of instruction No. 16. This is an instruction in reference to the doctrine of emergency and contains only one half of said doctrine. The plaintiff excepts to said doctrine first upon the ground that under the admitted evidence in the case the doctrine of emergency could not apply on account of the fact that the negligence of the defendant was the admitted negligence of not having proper and sufficient brakes, and that the accident was admittedly the result and the proximate result of the failure to have proper and efficient brakes as required by statutes of the state of Washington. Plaintiff further excepts to said instruction that in the event the court determines the doctrine of emergency may be properly submitted under the evidence to the jury, that said instruction is erroneous in that it does not submit to the jury the element that said doctrine does not apply if the emergency is brought on by any act of negligence of the defendant himself."

That is to say, appellant complains of the omission of the exception to the general rule that one who, by his own negligent act, creates an emergency can not invoke the rule for his own protection.

The instruction, as given, correctly states the general rule, and contains no erroneous matter. The

omission of the exception to the general rule is the instruction's only fault. Not having requested an instruction qualifying the emergency rule, appellant may not now successfully assign as error the giving of the instruction correctly stating the general rule.

"So it will be seen that the instruction is questioned only because it did not state the exception to the general rule to the effect that one who, by his own negligent act, creates an emergency cannot invoke the rule for his own protection.

"It is fair to state that neither party requested this instruction, and that it was given by the court of his own motion. It may further be said that each party was stoutly maintaining that the negligence of the other created the emergency, if any there was, and had the qualifying exception been embodied in the instruction, each would no doubt have argued to the jury that his client only could claim the benefit of the emergency rule. It is therefore rather difficult to say that the verdict would have been different if the instruction had set forth the exception to the general rule.

"However, our decision is not to be based upon what the jury might or might not have done, but rather upon the question of the duty resting upon the party who took exceptions to the instruction.

"Concededly, the instruction, as given, correctly states the general rule, and contains no erroneous matter. Its sole fault (if that be a fault) is that it did not go further, and set forth an exception or qualification thought to be applicable in this particular case. The subject was clearly in the mind of counsel when he took his exception, and had he even then proposed a further instruction giving the exception to the general rule, the court would no doubt have given it. Jury trials are serious and expensive things, and the public, as well as the parties, are interested in having cases once fairly tried and finally disposed of. Repeated trials of the same issue are to be encouraged only when, in spite of care and diligence, error has been committed and injustice has been done. Here, though the instruction as given may have been a two-

edged sword, still counsel ought not to be permitted to withhold a proper request for an additional instruction, speculate upon the jury's verdict, and then, after losing, still claim an error which would have been cured in ample time if he had acted with diligence.

"Speaking upon an exactly similar omission from an instruction in the case of *Brammer v. Lappenbusch, supra* [176 Wash. 625, 30 P. (2d) 947], this court said:

" 'As to the second phase of the instruction, the exception goes not to the incorrectness of what was contained therein, but rather to what was omitted from it. While the instruction might well have included the emergency feature, the court was not required to amend an otherwise correct instruction, in the absence of a request by appellant. The court need not be more diligent than the party. *Ziomko v. Puget Sound Electric Co.*, 112 Wash. 426, 192 Pac. 1009. One of the chief defenses of appellant was that he was called upon to act in an emergency. Hence, a proper request should have been made by him regarding that issue. An exception does not take the place of a request. *Allend v. Spokane Falls & N. Ry. Co.*, 21 Wash. 324, 58 Pac. 244.'

"The same rule was applied in *Anselmo v. Morsing,* 166 Wash. 111, 6 P. (2d) 377, 9 P. (2d) 100, and we consider these cases as settling the practice in this respect." *Lamping v. Ripley,* 178 Wash. 206, 34 P. (2d) 459.

Other assignments of error, based on the refusal to give certain instructions, are without substantial merit, and no good purpose would be served in discussing them and further extending this opinion.

Our examination of the record fails to disclose reversible error, therefore the judgment should be, and it is, affirmed.

BEALS, C. J., MAIN, TOLMAN, and GERAGHTY, JJ., concur.