[No. 26916.    *En Banc.*    April 26, 1938.]

ELEANOR MEACHAM, *Respondent,* v. PEDAR GJARDE et al., *Appellants.*[1]

*Ralph B. Potts,* for appellants.

*John J. Sullivan* (*Everett O. Butts,* of counsel), for respondent.

[1]Reported in 78 P. (2d) 605.

MILLARD, J.—While riding in an automobile owned by defendant marital community and operated by defendant wife, plaintiff sustained injuries. To recover therefor, plaintiff brought this action on the theory that she and defendant wife were joint adventurers. Denying the material allegations of the complaint, defendants affirmatively alleged that plaintiff was riding in the automobile as an invited guest at the time of the accident which resulted in injury to plaintiff. Trial of the cause to a jury under proper instructions on the question of joint adventure resulted in a verdict in favor of plaintiff. From judgment on the verdict, defendants appeal.

Appellants contend (1) that the evidence is insufficient to make a case for the jury on the issue of joint venture; (2) that the automobile involved in the accident was owned by a marital community of which appellant husband is the manager, and as he did not delegate his authority to appellant wife, there could be no contract or agreement of joint venture between appellant wife and respondent; and (3) that the trial court erred in the rejection of an offer of proof.

*First:* The evidence on the question of the character of the relationship existing between respondent and appellant wife at the time of the accident warranted the jury in finding the following facts: Appellants were residents of Seattle. Appellant wife and respondent, who recently came to Seattle to visit her brother, were friends of long standing. Shortly following her arrival in Seattle, respondent had a telephonic conversation with appellant wife. During the course of that conversation, something was said respecting a trip by these two to Tacoma to call upon respondent's cousin and also call upon appellants' daughter, who was attending school in that city. Ap-

pellant wife invited respondent to have luncheon at the home of the former on March 11th. Between nine and ten a. m. of that day, appellant wife telephoned respondent that she was not feeling well and asked whether respondent minded if the luncheon engagement were postponed. Respondent then suggested that they go to Tacoma to visit her cousin and appellants' daughter, and that she made the proposition to pay for the gas and buy their lunches, in which proposal appellant wife acquiesced. Between eleven and eleven-thirty that morning, appellant called for respondent. They drove to a gas station, where respondent purchased five gallons of gasoline. They then proceeded on their Tacoma trip, and while en route the accident out of which this action arose occurred.

That facts such as the foregoing make the issue of joint venture one for the jury is no longer open to question in this jurisdiction. *Hurley v. Spokane*, 126 Wash. 213, 217 Pac. 1004; *Lloyd v. Mowery*, 158 Wash. 341, 290 Pac. 710; *Bates v. Tirk*, 177 Wash. 286, 31 P. (2d) 525; *Duvall v. Pioneer Sand & Gravel Co.*, 191 Wash. 417, 71 P. (2d) 567; *DeNune v. Tibbitts*, 192 Wash. 279, 73 P. (2d) 521.

■ *Second:* While appellant wife had authority to use the automobile owned by appellant marital community, she had no authority, appellants insist, to enter into a contract of joint venture with respondent; that is, though an automobile may be maintained for family use, the wife cannot, in her use of the automobile, enter into a contract which may render the community liable in damages.

The record before us does not present for our determination the limitation suggested. On cross-examination, appellant husband testified:

"A. And did you get this Buick car just for Mrs. Gjarde to ride around? A. Yes. Q. And she was not

restricted in anything she might do in relation to taking friends out for rides, was she? A. No. Q. No. As far as her taking Mrs. Meacham to Tacoma, and making arrangements with her, you'd approve of that, wouldn't you? A. Oh, yes. I would let her do just as she pleased. Q. As she pleased. A. Yes. Q. And so whatever she did in relation to anything, any arrangements she made with Mrs. Meacham, would have your approval? A. Absolutely. Q. And has now? A. Yes, sir."

Although Mr. Gjarde retracted the foregoing statements on redirect examination, the jury was warranted, on the above-quoted testimony, in finding that appellant wife had authority, in her use of the automobile, to make such an arrangement as respondent claims was made.

Appellants argue, however, that the court, in its instruction No. 7, incorrectly submitted the issue to the jury. We do not find that the issue was submitted to the jury at all. Instruction No. 7 was a correct general statement of the family use doctrine. It is true appellants excepted to the instruction, but they made no request suggesting the limitation on the family use doctrine now claimed. Error cannot be predicated on an instruction correctly stating a general rule applicable to the case, because it failed to instruct on the exception to the rule, in the absence of any request for an instruction stating the exception to the rule. *Lamping v. Ripley,* 178 Wash. 206, 34 P. (2d) 459; *TeSelle v. Terpstra,* 180 Wash. 73, 38 P. (2d) 379.

As stated above, the question whether, under the family use doctrine, the wife may enter into the contract essential to a joint adventure and lawfully bind the community without consent or assent of her husband, who is the exclusive business agent of the community, is not before us. We stress this phase of the

opinion to obviate future attempted utilization of the family use doctrine as a basis for an extension of the joint adventure doctrine to include other than business joint adventures, and to make clear that we only hold that sufficient evidence was introduced to warrant inference by the jury that Mr. Gjarde authorized his wife to make such a contract as was invoked herein.

*Third:* Prior to the commencement of this action, Ford Q. Elvidge was one of the personal attorneys for appellants. He was called by appellants as a witness in this action. After some preliminary questions, he was asked whether he had had any conversation with Mr. Butts about his clients' relationship to this case. He answered in the affirmative, stating that the conversation occurred a week or so before this suit was actually commenced. At this point, the jury was sent from the room. After some colloquy between Mr. Sullivan and Mr. Butts, attorneys for respondent, on the one hand, and Mr. Potts, attorney for appellants, on the other, Mr. Potts made an offer of proof for the substance of which we quote Mr. Elvidge:

"Mr. Butts came to my office one afternoon between four and five, as I said, shortly before this suit was instituted, in response to having previously telephoned the office. I told him to come, and he did, and discussed this case and several features of it.

"And then, with reference to the offer that Mr. Potts said he made, he asked me if I would write a letter advising him that if Mrs. Meacham did buy the gasoline on that occasion, that he, Mr. Gjarde, would be liable. And I told him that I would do no such thing, that I was not interested. And he told me that he would be willing to pay me for writing such a letter. But I, of course, told him that I just wasn't interested, and if that was the main topic of his conversation, why, there wasn't any use in our continuing the conference. That is not all of what he said, but that is what he said with reference to what Mr. Potts made his offer on."

The court's rejection of the offer did not constitute error. Appellants insist that the evidence offered was admissible under our holding in *Wood v. Miller,* 147 Wash. 251, 265 Pac. 727, where we said:

"One of the principal witnesses for the respondent was permitted on the witness stand to tell a story of what she claimed was an ᾽attempt, upon the part of appellant's then attorneys, to bribe her to absent herself from the state so as not to testify in the trial of the cause. The attorneys involved were permitted to testify that the witness solicited a bribe, and that they, acting under the directions of the prosecuting attorney, sought only to get evidence which would result in her conviction of the offense of soliciting a bribe. Under our previous holding in *State v. Constantine,* 48 Wash. 218, 93 Pac. 317, this evidence seems to have been properly admitted. It was there said:

" 'It is a rule of evidence, as old as the law itself, applicable alike to both civil and criminal cases, that a party's fraud in the preparation or presentation of his case, such as the suppression or attempt to suppress evidence by the bribery of witnesses or the spoilation of documents, can be shown against him as a circumstance tending to prove that his cause lacks honesty and truth.'

"But it is said the attorneys had no authority to bind their client in such a manner, it being beyond the scope of their general employment. We think, however, that attorneys having charge of the preparation of a case for trial are so far the agents of their clients that, notwithstanding his refusal to have anything to do with the matter and saying to them what amounted to a direction to use their own judgment, an objection based upon want of authority in the attorneys was properly overruled."

An examination of the record in *Wood v. Miller, supra,* discloses that there is testimony to the effect that the client authorized his attorneys to proceed as they did in the hope of convicting the witness of seeking a bribe. Clearly, the evidence was admissible in that case.

It is patent that the request which Mr. Elvidge would have testified Mr. Butts made of him concerned a vital issue in the case. The proposition affects the integrity of respondent's case in its entirety. The offer of proof should have shown that respondent was in some way connected with, or knew of, Butts' purpose in visiting Elvidge. Otherwise, the integrity of respondent and her case would be affected by an abortive endeavor—of which respondent knew nothing —of Butts to obtain additional evidence which in no way actually came into the case.

A perusal of the record in *Wood v. Miller, supra,* will show that we did not hold that an attorney is authorized to bind his client by an attempt to bribe opposing witnesses. As stated above, the client knew and authorized his attorneys to make the attempt to obtain evidence of plan of the witness to blackmail him.

Evidence to show that a plaintiff's counsel attempted to induce one of the defendant's witnesses to testify falsely is incompetent when there is nothing to show that the plaintiff was in any way connected with the attempt, since the attorney's authority to act for his client only extends to the doing of lawful acts. In so holding, the court said in *Hamel v. Brooklyn Heights R. Co.,* 69 N. Y. Supp. 166, 59 App. Div. 135:

"Defendant's counsel asked its witness Bradley on redirect examination:

" 'What did Mr. Pearsall [the plaintiff's attorney and counsel] say to you about forgetting this,—asking you to forget about having seen the accident? (Objected to as incompetent. Objection sustained and exception taken.)'

"The question is addressed to defendant's own witness. It does not clearly appear that any conversation between Mr. Pearsall and the witness had been called forth on cross-examination. The learned counsel for the appellant concedes 'that the evidence sought

to be introduced did not directly impeach any witness produced upon the trial,' but claims that the evidence is competent against the plaintiff, for the reason that it shows an attempt on the part of her attorney to induce a witness to testify falsely. It is not alleged that there is any evidence to connect the plaintiff with any attempt to induce the witness to testify falsely, or conveniently to forget, or to show that plaintiff had seen the witness at any time, or that plaintiff took part in the preparation of the case for trial. I think that the agency involved in the relation of attorney and client cannot be applied so as to hold the client responsible for an alleged attempt of the attorney to commit a crime (Penal Code, §§ 104, 112), independent of all evidence in any way connecting the client with the attempt, so as to permit in the action testimony of the alleged attempt of the attorney, when such testimony is offered only on the principle that it is competent to show such an attempt if it had been made by the plaintiff herself. The authority of the attorney under the retainer is only to do lawful acts. *Averill v. Williams,* 1 Den. 501, 504; *Welsh v. Cochran,* 63 N. Y. 181. And it will be assumed that the common purpose of the client and the attorney was fairly to obtain, properly to prepare, and honestly to present her claim before the court. Until some evidence was given, or until it was stated that there was evidence at hand ready to be put in, that the plaintiff was party or privy to a design to commit such crime, then the testimony was neither relevant nor competent upon the question of plaintiff's credibility as a witness. *Non constat* but that her case was meritorious, aside from any such attempt of her attorney to strengthen it. In this case the alleged attempt failed, and the witness testified in favor of the defendant, and the jury has pronounced that the plaintiff's case was meritorious. If it could be shown that the attempt had succeeded so far as in any way to affect the case, then the remedy was at hand, based upon the inherent power of the court over its own judgment. *Furman v. Furman,* 153 N. Y. 309, 314, 47 N. E. 577. But the sole question before us is whether, under the circumstances, the ruling was reversible error, so far as the judgment

and order are concerned. I think that it was not. Assume that the witness had been permitted to answer that the plaintiff's attorney had sought to suppress or to change his testimony. Plainly, the attempt, if made, had failed; for the defendant does not quarrel with his witness, and there is not a vestige of testimony even suggested that plaintiff had the slightest concern with the affair."

The judgment is affirmed.

STEINERT, C. J., HOLCOMB, and ROBINSON, JJ., concur.

BEALS, J. (concurring in the result)—I am in accord with the foregoing opinion, save as to the third division thereof. It seems to me that the trial court properly rejected the evidence offered by appellants as stated by the witness Ford Q. Elvidge, for the reason that the evidence offered was immaterial. Mr. Elvidge, sworn as a witness for appellants, stated the facts to which he would testify. From his statement, it appears that Mr. Butts, at a time prior to the institution of this action, asked the witness, who had represented Mr. Gjarde as his counsel, if he (Mr. Elvidge) would write a letter to Mr. Gjarde, "advising him that if Mrs. Meacham did buy the gasoline on that occasion, that he, Mr. Gjarde, would be liable," and that Mr. Butts further offered to pay Mr. Elvidge for writing such a letter. In other words, Mr. Butts requested Mr. Elvidge to write Mr. Gjarde (without any request on the latter's part), stating Mr. Elvidge's opinion on a matter of law, based upon an assumed state of facts.

I cannot see why Mr. Elvidge's opinion on such a legal question could have affected, one way or another, the lawsuit which was later instituted. Mr. Gjarde was represented by counsel, and could procure Mr. Elvidge or other counsel if he desired to do so. These attorneys would doubtless make up their own minds

as to the law. While Mr. Elvidge naturally and properly refused to write any such letter, in my opinion the request that he do so did not affect the integrity of the case which Mrs. Meacham subsequently brought. The statement by Mr. Elvidge expressly negatives the idea that it was suggested that he in any wise concern himself with the facts of the case, or what any witness or party would testify concerning the facts. It seems to me clear that the opinion of any lawyer as to a question of law based upon an assumed state of facts, which might or might not be true, given in accordance with the request made by Mr. Butts, would have no bearing at all upon the lawsuit which was later instituted, and that for this reason the trial court properly rejected the offered testimony.

Incidentally, it may be noted that this court holds that the opinion which Mr. Butts asked for was legally sound.

GERAGHTY and SIMPSON, JJ., concur with BEALS, J.

BLAKE, J. (dissenting)—I think the offer of proof contained in Mr. Elvidge's statement was of evidence competent and material to the main issue of fact in controversy, namely, whether Mrs. Meacham bought gas for the trip. To my mind, it is wholly immaterial whether she authorized or knew of Mr. Butts' proposition to Mr. Elvidge. Mr. Butts afterwards became one of her attorneys of record, and at the time of the conversation he was engaged by her acknowledged attorney, Mr. Sullivan, in the preparation of her case. In law, Mr. Butts was her agent, and she was chargeable with his acts and conduct affecting the integrity of her cause.

Believing the court erred in rejecting the offer of proof, I dissent.

MAIN, J., concurs with BLAKE, J.