[Nos. 36301, 36386. Department One. December 13, 1962.]

SUSIE M. GOODNER, *as Guardian ad Litem, Respondent,* v.
CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC
RAILROAD COMPANY, *Appellant.*

SUSIE M. GOODNER, *as Administratrix, Respondent,* v.
CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC
RAILROAD COMPANY *et al., Appellants.*\*

\*Reported in 377 P. (2d) 231.

*Richard L. Gemson,* for appellant Chicago, Milwaukee, St. Paul and Pacific Railroad Company.

*John D. MacGillivray, Willard W. Jones, John J. Lally, Richard F. Wrenn,* and *Donald N. Olson,* for appellant Spokane County.

*Richter, Rodgers & Wimberley,* for respondent.

ROSELLINI, J.—This action was brought to recover damages for the alleged wrongful death of Virginia Littleton and injuries to her minor son, which occurred when the automobile in which they were guests was struck by a train at a crossing in Opportunity, Washington, an unincorporated town. The driver of the automobile, the owner of the train, and Spokane County, which owned the road on which the automobile was traveling, were named as defendants.

After the trial, the court instructed the jury that the driver of the automobile was negligent, as a matter of law, but could not be held liable unless the jury found that she was guilty of gross negligence, inasmuch as the host-guest statute (RCW 46.08.080) applied. The jury exonerated the driver of the automobile, but rendered verdicts in favor of the plaintiff and against each of the other defendants, who now appeal.

We will treat first the questions raised by the defendant railroad, which will be referred to hereafter as the Milwaukee. It is its major contention that there was no evidence to support the finding that its employees were guilty of negligence which proximately caused the accident.

The evidence was that the defendant driver, at the request of the deceased, picked her and her young son up at a church located about three blocks north of the railroad crossing on Union Road, at approximately 3:30 p. m. on November 8, 1960. It was a clear day, and the sun was shining. The automobile approached the crossing as the train was approaching from the west, traveling at a rate of speed of from 15 to 20 miles per hour. The driver of the automobile did not see or hear the train and drove onto the track, where the automobile was struck broadside by the

train and was pushed down the track a distance of about 200 feet before the train came to a stop.

The following physical facts pertaining to the grade crossing were established: Union Road is a paved county road 20 feet in width, running north and south, which intersects at right angles the Milwaukee's main-line track running east and west. The approach to the crossing from the north, the direction from which the automobile was proceeding, is moderately ascending. Prior to crossing the main-line track, Union Road crosses a side track or spur running some 19 feet to the north and parallel to the main-line track. The crossing is designated by standard crossbuck signs on either side of the tracks.

Situated off the Milwaukee's 100-foot right of way 52 feet west of the west edge of Union Road, is a vacant warehouse some 340 feet in length paralleling the spur track. The warehouse had been at the site possibly 40 to 50 years. North of the railroad tracks and partially on the county road, is a heavy growth of foliage. Both the foliage and the warehouse obstructed the view of motorists headed south on Union Road. However, beginning at a distance of about 35 feet north of the main-line track, or approximately a car length north of the spur track, an approaching motorist would have an unobstructed view to the west, the direction from which the train was coming.

Both the deceased and the driver of the automobile were familiar with the crossing, having driven over it several times a week for a number of years.

The engineer testified that as the train, consisting of a diesel engine and caboose, approached the crossing, the bell was ringing and he gave the crossing whistle prescribed by company regulations. His evidence in this regard was confirmed by members of the crew. In addition, two ladies who were inside a house located about a half block from the crossing, testified that they heard the whistle. On the other hand, another witness, who was working on a car in the back yard of his mother's house, located southwest of the crossing, testified he heard the train whistle when

it was an estimated distance of several hundred feet from him, but stated he was watching the train and that no whistle was blown after the train passed the west corner of the vacant warehouse, which was 392 feet from the crossing; and another witness, who was inside his repair garage east of the crossing, testified that he did not hear the whistle or bell, but admitted that he could not say positively whether the whistle was sounded. Another witness, who lived southeast of the crossing and was at her chicken house nearby, stated that she did not hear the train whistle but did hear a bell clanging before the collision.

The sides of the diesel engine were painted a bright orange and the headlight was burning. The defendant driver admitted that had she seen the train, she could have stopped her automobile, which was traveling at a speed of about 12 miles per hour, in time to avoid the collision.

The fireman testified that, as the train approached the crossing, he saw the automobile just as it went onto the track. He called out to the engineer, who immediately took his hand off the whistle cord and applied the emergency brake. This brake was so designed that it achieved its full braking power in about 7 seconds. This was the reason that the automobile was pushed down the track some distance before the train came to a stop. The Milwaukee contends that there was insufficient evidence to support a jury finding that it failed to give adequate warning of its approach, first because it was conclusively shown that the bell was sounded, and this is all that is required by statute, and second, because the evidence that its employees failed to sound the whistle was not probative.

RCW 81.48.010 provides:

"Every engineer driving a locomotive on any railway who shall fail to ring the bell or sound the whistle upon such locomotive, or cause the same to be rung or sounded at least eighty rods from any place where such railway crosses a traveled road or street on the same level (except in cities), or to continue the ringing of such bell or sounding of such whistle until such locomotive shall have crossed such road or street, shall be guilty of a misdemeanor."

The Milwaukee maintains that the statute sets the limits of its obligation, and that compliance with the statute renders it free of negligence. It cites *White v. Arizona Eastern R. Co.,* 30 Ariz. 151, 245 Pac. 270; *New Orleans & N. E. R. Co. v. Hegwood,* 155 Miss. 104, 124 So. 66; *Director General of Railroads v. Pence's Adm'x,* 135 Va. 329, 116 S. E. 351, and *Hoelzel v. Chicago, R. I. & P. R. Co.,* 337 Mo. 61, 85 S. W. (2d) 126, all of which tend to support this view of the law.

 However, there are many other courts which take the view that a statute prescribing penalties for failure to give certain signals or warnings sets only the minimum standard of conduct; and it is for the jury to decide in a given case whether the warnings given were adequate under the circumstances. Among the cases supporting this viewpoint are *Southern Pac. R. Co. v. Mitchell,* 80 Ariz. 50, 292 P. (2d) 827 (superseding the Arizona case cited by the appellant) and *Hackett v. Wabash R. Co.* (Mo.), 271 S. W. (2d) 573, which supersedes the Missouri case which the appellant cites.

The reasoning of these cases commends itself to this court. And it is said in 44 Am. Jur. 757, § 514:

" . . . the general rule is that the whole duty of a railroad company in respect of signaling the approach of its trains to highway crossings is not necessarily performed by a naked compliance with the statute in that behalf, and that such compliance does not necessarily relieve the railroad company from the necessity of taking such additional precautions as are essential to the safety of passers on the highway. . . ."

The common law requires that the warning given should be adequate under the circumstances. The jury in this instance may have found that the whistle was not sounded and that, had it been sounded, it would have been heard by the driver of the automobile in time to avoid the accident. It had before it for consideration the fact that the windows of the automobile were closed, and that there was a long warehouse between the automobile and the locomotive, which may have interfered with the transmission

of the sound of the bell. It cannot be said as a matter of law that the sounding of the bell alone was an adequate warning under the circumstances.

█ We also find no merit in the contention of the Milwaukee that there was no probative evidence that the whistle was not sounded. It cites the cases of *Cox v. Polson Logging Co.*, 18 Wn. (2d) 49, 138 P. (2d) 169, and *Holland v. Northern Pac. R. Co.*, 55 Wash. 266, 104 Pac. 252. In the *Cox* case, the only evidence that the whistle was not blown was that of the driver of the automobile involved, who merely stated that he did not hear any whistle or bell; whereas there was an abundance of testimony, from both interested and disinterested witnesses, that the bell was rung and the whistle blown timely and repeatedly. We held that the testimony of the driver did not constitute substantial evidence and would not sustain a verdict. In arriving at this conclusion, however, we took note of the fact that a verdict may rest upon negative testimony where the witness or witnesses are so situated that, in the ordinary course of events, they would take cognizance of the disputed fact had it occurred, or that they had full and accurate knowledge of the facts concerning which they testified.

In the *Holland* case, we held that the testimony of an interested witness was not probative because she was not in a position to hear the whistle which she testified had not been blown.

As is pointed out in 2 Wigmore on Evidence (3d ed.) 778, § 664,

" . . . Courts have often been asked to exclude testimony based on what may be called *negative knowledge, i.e.* testimony that a fact did not occur, founded on the witness' failure to hear or see a fact which he would supposedly have heard or seen if it had occurred.

"Yet there is no inherent weakness in this kind of knowledge. It rests on the same data of the senses. It may even sometimes be stronger than affirmative impressions. The only requirement is that the witness should have been so situated that *in the ordinary course of events he would have heard* or seen the fact had it occurred. This sort of testimony is constantly received,—particularly in proof of the

failure to give railroad signals, the loss of a chattel, the absence of a witness, the non-existence of a fictitious person, the non-payment of money, and other negative facts: . . ."

In this case, there were at least two witnesses who were paying attention to the train as it approached, who observed that the bell was ringing, and who testified that the whistle was not sounded after it passed the west end of the warehouse. These witnesses were distinterested and were in a position to hear the whistle if it were sounded. It was for the jury to determine whether their testimony or that of the witnesses for the Milwaukee should be accepted.

The crossing at which the accident occurred was within the Milwaukee yard limits. There was evidence that a speed limit of 15 miles per hour was prescribed, and that the purpose of this rule was to protect railroad equipment. There was no reference to crossings in the rule and no evidence that it was promulgated with crossing hazards in mind. The Milwaukee requested an instruction withdrawing the question whether the train was proceeding at an excessive rate of speed from the consideration of the jury, and objected to the giving of an instruction that rules of the company could be considered by the jury as bearing on the question of negligence.

A violation by railroad employees of a regulation adopted by the railroad itself with respect to the speed of a train may be considered in determining the due care of the railroad company in an action for injury to persons or property at a highway crossing, but it must appear that such regulation was adopted to secure the safety of persons using the highway crossing. *Anstine v. Pennsylvania R. Co.*, 342 Pa. 423, 20 A. (2d) 774; *Peterson v. Boston & Maine Railroad*, 310 Mass. 45, 36 N. E. (2d) 701; *Eggleston v. Louisiana & Ark. R. Co.*, 192 So. 774 (La. App.).

The trial court at one point indicated that it might not submit the question of excessive speed to the jury, and the Milwaukee requested an instruction withdrawing this issue, but no error is assigned to the court's failure to give the

instruction. The only assignment of error in regard to this question is that the trial court erred in instructing the jury as follows:

"Evidence has been introduced as to certain operating rules of the defendant Milwaukee railroad in force at the time of accident. Any evidence adduced, either to show that such rules were complied with or not complied with may be considered by you only as it bears on whether or not the defendant Milwaukee railroad operated its train at the time and place in question in all respects in a reasonable and prudent manner.

"Proof, if you find from a preponderance of the evidence there is any proof in the case, that the engineer failed to comply with any operating rules of the defendant railroad company, would not in and of itself alone be proof of negligence on his part."

The Milwaukee does not contend that this statement of the rule is incorrect as it applies to rules of the company pertaining to signals at crossings, which were promulgated for the benefit of persons using the crossing and which were introduced in evidence; but simply contends that it does not apply to the company rules regulating speed in the yard limits, because these rules were not adopted with the safety of such persons in mind. It did not request or submit an instruction embodying the qualification that the operating rule, in order to be probative evidence bearing on negligence, must have been adopted for the safety of persons using the crossing.

█ It is well settled that error cannot be predicated on the giving of an instruction which correctly states the law but does not embody a given qualification or exception if no instruction stating the qualification or exception was requested by the complaining party. *Harris v. Holroyd*, 33 Wn. (2d) 915, 207 P. (2d) 765; *Meacham v. Gjarde*, 194 Wash. 526, 78 P. (2d) 605; *TeSelle v. Terpstra*, 180 Wash. 73, 38 P. (2d) 379; *Lamping v. Ripley*, 178 Wash. 206, 34 P. (2d) 459; *Anselmo v. Morsing*, 166 Wash. 111, 6 P. (2d) 377, 9 P. (2d) 100.

In *Lamping v. Ripley, supra*, a leading case on this subject, error was assigned to the giving of an instruction

relating to acts in emergencies, because it did not cover the exception to the rule which applies where the emergency is created by the negligence of the acting party. We said:

"Concededly, the instruction, as given, correctly states the general rule, and contains no erroneous matter. Its sole fault (if that be a fault) is that it did not go further, and set forth an exception or qualification thought to be applicable in this particular case. The subject was clearly in the mind of counsel when he took his exception, and had he even then proposed a further instruction giving the exception to the general rule, the court would no doubt have given it. . . ."

Since the error alleged is one that could have been cured had an amendment to the instruction been requested, it does not afford grounds for the granting of a new trial by this court.

We proceed now to the questions raised by the defendant County of Spokane, which was found guilty of negligence in failing to clear its right of way of brush and timber, as required by RCW 36.86.100. The evidence tended to show that the view of the defendant driver was obstructed by brush and trees growing on the edge of the right of way and on the private property which adjoined it.

The first error assigned is the refusal of the court to admit in evidence a series of photographs offered by the county. These photographs were taken from an automobile approaching the crossing, some months after the accident, when the trees were bare of foliage. They were refused by the court because they represented an experiment which was not performed under conditions which were substantially similar to those that existed at the time of the occurrence and because they did not depict the scene as it was at the time of the accident.

This ruling was correct. It is settled that experiments are permitted, and the results thereof admissible, only when the conditions under which they are conducted are substantially similar to those existing at the time of the accident or occurrence in question. In ruling upon such

matters, the trial court exercises its discretion (*Barnes v. Labor Hall Ass'n*, 51 Wn. (2d) 421, 319 P. (2d) 554; *State v. McMurray*, 47 Wn. (2d) 128, 286 P. (2d) 684, and cases cited therein), and there was no abuse of that discretion in this instance.

The county was not, as it contends, deprived of an opportunity to show to the jury the fact that there were obstructions to the view of a driver, other than those which were created by the trees and foliage on the county's right of way. Numerous photographs of the scene were put in evidence; and these showed the scene as it was when the accident occurred.

It is next contended that there was error in permitting a medical witness to make use of a medical publication concerning the most recent statistics on longevity of women who have had radical mastectomies. The county cites authorities holding that an expert witness may not read from the medical texts or treatises on which he bases his opinion, at least not on direct examination. We have reviewed the testimony of the doctor in this case, and find that he did no more than refer to the publication, and that the opinion which he gave of the life expectancy of the deceased was based upon his own knowledge and experience, including his knowledge of the pertinent statistics. We find no merit in this assignment of error.

The county challenges the constitutionality of Laws of 1955, chapter 310, § 6, p. 1382 (RCW 36.86.100) contending that it violates Article 2, § 19, of the state constitution, which provides: "No bill shall embrace more than one subject, and that shall be expressed in the title."

The title to the act reads:

"An Act relating to railroad grade crossings; and amending section 37, chapter 187, Laws of 1937 and RCW 36.86.040, section 81, chapter 53, Laws of 1937 and RCW 47.32.140 and section 1, chapter 22, Laws of 1937 and RCW 81.52.100 through 81.52.120."

All of the laws which this act amends pertain to matters which concern railroad grade crossings. But the county contends that because the act regulates signs and vegeta-

tion at crossings, the procedure for establishing and maintaining crossings, and the erection of signs or billboards on private property at crossings, it covers more than one subject, and the subjects are not embraced in the title.

In *Casco Co. v. Public Util. Dist. No. 1*, 37 Wn. (2d) 777, 226 P. (2d) 235, we said of this constitutional provision, quoting from 50 Am. Jur. 178, § 197:

" 'The constitutional prohibition of more than one subject in an act does not impose any limitation on the comprehensiveness of the subject, which may be as comprehensive as the legislature chooses to make it, provided it constitutes, in the constitutional sense, a single subject and not several. To constitute plurality of subject, an act must embrace two or more dissimilar and discordant subjects, that by no fair intendment can be considered as having any legitimate connection with or relation to each other. Within the meaning of the constitutional provision, matters which apparently constitute distinct and separate subjects are not so where they are not incongruous and diverse to each other. Generally speaking, the courts are agreed that a statute may include every matter germane, referable, auxiliary, incidental, or subsidiary to, and not inconsistent with, or foreign to, the general subject or object of the act.' "

In *Gruen v. State Tax Comm.*, 35 Wn. (2d) 1, 211 P. (2d) 651, we stated the rule in this concise language:

" . . . Where the title of a legislative act expresses a general subject or purpose which is single, all matters which are naturally and reasonably connected with it, and all measures which will, or may, facilitate the accomplishment of the purpose so stated, are properly included in the act and are germane to its title."

Here, the act pertains generally to railroad grade crossings. All of the matters which it regulates are directly involved with such crossings, whether they concern railroad property, county or other roads, or private property adjacent to such crossings. The title gives notice of the scope of the act, and the act itself does not touch any matters which are not pertinent. We are convinced that it is not open to the objection raised by the county.

Error is assigned to the giving of instruction No. 16, which was as follows:

"I instruct you that under the statutes of the State of Washington the County of Spokane was required to clear brush and timber from the right-of-way of county roads for a distance of 100 feet from railroad crossings in such a manner as to permit a person traveling upon the road to obtain an unobstructed view in both directions of an approaching train. If you find from a preponderance of the evidence (1) that the County of Spokane failed to clear brush and timber from the right-of-way of Union Road for a distance of 100 feet north from the Milwaukee railroad tracks, and (2) that the presence of brush and timber on the right-of-way of the county road obstructed the view of Mrs. Payne and Mrs. Littleton of the approaching train, and (3) that Mrs. Virginia Littleton was within the class of people sought to be protected by the statute, then I instruct you that the County of Spokane was negligent, as a matter of law, and if you find from a preponderance of the evidence that such negligence was a proximate cause of the collision, then you must find for the plaintiff as administratrix of the estate of Virginia R. Littleton, against the defendant County of Spokane, unless you find that the said deceased was guilty of contributory negligence."

 The county concedes that it is the general rule that violation of a statute enacted for the protection of the class of which the plaintiff is a member constitutes negligence per se, and does not deny that the statute in question had as its purpose the protection of persons using the crossing. It also concedes that the vegetation had not been cut since 1957. But it contends that it was nevertheless without fault in this instance, because some of the trees and foliage on its right of way were behind a private fence which encroached on the right of way. It cites no authority sustaining its view that a county may escape liability for failure to comply with the statute by allowing adjoining owners to encroach upon the right of way, and we do not assume that such a rule of law exists. Under the statute it was the mandatory duty of the county to clear its right of way so that vegetation growing on it would not obscure the view of users of the road. This it failed to do.

■ While it is true that the evidence showed that brush, foliage and structures on the adjoining private property also obscured the view of users of the road, it cannot be said as a matter of law, as the county insists, that the vegetation on its right of way did not contribute materially to the obstruction of the view. The trial court correctly held that it was for the jury to decide whether the existence of this vegetation on the right of way was a proximate cause of the accident.

The county urges that the instruction placed upon it the burden of clearing brush from the adjoining private property, but we do not think it is open to this construction. The jury was told that the county would be liable only if it found that the brush and timber on the county's right of way obstructed the view of the driver and the deceased, and further found that the other necessary elements of negligence and proximate cause were present. There was in the instruction no suggestion that the county had the duty of clearing the adjoining property.

Error is assigned to the denial of the county's motion for a directed verdict, made at the close of all of the evidence, when the county raised for the first time the objection that the plaintiff had neither alleged nor proved that she had filed a claim, as required by RCW 36.45.030. It is also urged that the court erred in permitting the plaintiff to reopen her case after the verdict was returned, for the purpose of proving that a claim had been filed.

It is not denied that a claim was served within the time prescribed by law and was rejected by the board of county commissioners. It is simply the objection of the county that proof of this fact was not made properly.

RCW 36.45.030 provides:

"No action shall be maintained on any claim for damages until it has been presented to the board of county commissioners and sixty days have elapsed after such presentation, . . ."

In the case *Rose v. Pierce Cy.*, 25 Wash. 119, 64 Pac. 913, the objection that the plaintiff had failed to present his

claim against the county to the board of county commissioners for allowance or rejection, prior to bringing action thereon, as the statute requires, was raised for the first time in this court, and we held that the objection had been waived. At page 121 of the opinion, this court said:

". . . In *Neis v. Farquharson*, 9 Wash. 508 (37 Pac. 697), we held that the objection that there was no proof that the plaintiffs ever presented their demand or claim to the administrator for allowance or rejection, as they were required to do by the statute, could not be taken for the first time in the appellate court. In principle, there would seem to be no difference between that case and the case at bar. The statute makes it a condition precedent to the right to maintain an action against an administrator that the claim be first presented to him for allowance or rejection; and if the administrator waives this requirement of the statute, by failing to make the objection in the trial court, it must be a waiver on the part of the county to fail to object in that court that the claim sued on has not been presented to its board of commissioners. The purpose of the rule is to give the claimant an opportunity to supply the requisite pleadings or proof, as the case may require, which he cannot do if the objection is made for the first time on appeal. . . ."

This case was overruled sub silentio in *Caron v. Grays Harbor Cy.*, 18 Wn. (2d) 397, 139 P. (2d) 626, 148 A. L. R. 626, holding that a county may not waive substantial compliance with the statute. Also, the case of *Hamilton v. Kiona-Benton Irr. Dist.*, 45 Wn. (2d) 544, 276 P. (2d) 583, is inconsistent with the *Rose* case, to which it makes no reference, in that it holds that the performance of the statutory requirement that a claim be filed against a water district is a condition precedent which must be pleaded and proved.

However, this court has since adopted its new Rules of Pleading, Practice and Procedure, of which Rule 9 (c) is one. This rule provides that in pleading performance or occurrence of conditions precedent, "it is sufficient to aver generally that all conditions precedent have been performed or have occurred." The rule also provides that "a denial of performance or occurrence shall be made specifically and with particularity."

This rule was adopted from the Federal Rules of Civil Procedure. It has been construed not to require pleading of procedural conditions precedent (*Snyder v. LeRoy Dyal Co.*, (1940, D. C. N. Y.) 1 F. R. D. 362); and it has also been held that the failure to plead the performance of conditions precedent can be cured by amendment or proof. *Resolute Ins. Co. v. Percy Jones, Inc.*, 198 F. (2d) 309.

The statute requiring the filing of a claim with the county is a procedural statute, and the filing of such a claim is a procedural condition precedent, which it is not necessary to plead. The defendant may raise the objection that no claim was filed, in which case the burden is on the plaintiff to show that he has complied with the statute.

In this case, the objection was not raised until the end of the trial. The plaintiff thereafter moved to reopen for the sole purpose of proving that a proper claim had been filed. The county was in no way prejudiced by the granting of this motion.

The judgment is affirmed.

FINLEY, C. J., HILL, and WEAVER, JJ., concur.

---

March 4, 1963. Petition for rehearing denied.