[No. 26601.  Department Two.  November 19, 1937.]

JAMES DeNUNE, *as Administrator, Respondent,* v. J. R. TIBBITTS, *Appellant.*[1]

[1]Reported in 73 P. (2d) 521.

*Ralph B. Potts,* for appellant.
*S. A. Gagliardi,* for respondent.

ROBINSON, J.—On the morning of July 26, 1935, while Lulu Almina DeNune was riding in a truck driven by her son-in-law J. R. Tibbitts, it collided with a street car, and Mrs. DeNune was so seriously injured that she died three days thereafter. This action for wrongful death was brought by the administrator of Mrs. De-Nune's estate and resulted in a verdict for the plaintiff. The defendant made the customary alternative motions, which were denied, and judgment was entered on the verdict. Defendant appeals.

That the death of Mrs. DeNune proximately resulted from appellant's negligence, is unquestioned. The appeal revolves around an affirmative defense pleaded as follows:

"That at all times mentioned in the complaint of the plaintiff, the deceased, Lulu Almina DeNune, was a guest at her own invitation in the automobile of the defendant, James R. Tibbitts."

The first question raised by the assignments of error is: Upon a consideration of all the evidence, does it appear, as a matter of law, that Mrs. DeNune was a guest of Tibbitts, within the meaning of the following statute:

"No person transported by the owner or operator of a motor vehicle as an invited guest or licensee without payment for such transportation shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator." Rem. Rev. Stat. (Sup.), § 6297-1 [P. C. § 196-57a] (Laws of 1933, chapter 18, p. 145, § 1.)

The appellant contends that he more than met the burden of establishing, by a preponderance of the evidence, that Mrs. DeNune was his guest. He claims that

the evidence established that fact, as a matter of law. In view of such contention, one would expect to find in the record direct and undisputed evidence of invitation, or, at least, direct and positive proof of some fact from which an inference of invitation must necessarily follow. There is no such evidence. The contention that the relation of host and guest appears as a matter of law is built up by an ingenious process of elimination. It is contended that (1) under the circumstances shown, there could have been but two possible legal relationships between Tibbitts and Mrs. DeNune; that is, that they were either host and guest or joint adventurers; and that (2) it was shown as a matter of law that they were not engaged in a joint adventure; hence, it is concluded that their relationship was necessarily that of host and guest.

We may say, parenthetically, that we are not at this time prepared to accept the conclusion numbered (1) above as sound. It is implicit in the statute itself that, where one rides in the motor vehicle of another, their mutual relation may be that of host and guest or licensor and licensee, and we, in common with other courts, have held that it may be that of joint adventurers. It is conceivable, or, at least, not impossible, that some other relation may exist, not yet defined and delimited. We do not pursue this matter further because the conclusion contended for must fail if either contention (1) or (2) is unsound, and we are of the opinion that the second is clearly so.

■ It was not shown, as a matter of law, that the appellant and the deceased were not engaged in a joint adventure. The evidence that they were was amply sufficient to make the existence or non-existence of that relation a question for the jury.

The evidence showed that Mrs. DeNune had three daughters, one of whom was the wife of Harvey Bon-

ney, one the wife of appellant Tibbitts, and the third, Ellen Lee, a little girl of twelve, lived at home. On the evening of June 25th, while the Tibbitts were calling at the DeNune residence, Bonney appeared and stated that his wife had been ill for ten days and that he wanted someone to come over to his house and do her washing. Someone called attention to the fact that Mrs. Bonney had a washing machine. Neither Mrs. DeNune nor Mrs. Tibbitts had such an appliance. It was "agreed" that Mrs. DeNune and Mrs. Tibbitts would each collect her own washing and take it over to the Bonney residence in the Tibbitts' truck and do Mrs. Bonney's and their own washing in Mrs. Bonney's machine.

According to Bonney and Ellen Lee, the appellant Tibbitts was present and participated in arriving at this understanding. He testified, however, that he did not participate in or hear the conversation, but that his wife subsequently told him of the plan and asked him if he would take them over to Bonney's, and he agreed to do so. This is the only conflict in the somewhat vague evidence concerning the arrangements for the trip. It does not even appear whether the idea of the expedition was suggested by Mrs. DeNune or by Mrs. Tibbitts. In view of the death of Mrs. DeNune, Mrs. Tibbitts was more likely to know about this than anyone else who was present when the trip was planned, but, for some unknown reason, she was not called as a witness.

It was further shown that the appellant was employed with his truck on a W. P. A. project being carried on at Fort Lewis. It was a part of his duty to pick up other workmen residing near him and transport them to the location where the project was being carried out. In making the trip to Bonney's, he was compelled to depart a mile or more from his customary

route. At the time the accident occurred, one of these workmen was already on board the truck, and appellant had passed up another, advising him that he would return for him after he had made the side trip to Bonney's.

It is strenuously argued on behalf of appellant that no more is shown by the evidence than a common objective in point of time and place, which is held in *Eubanks v. Kielsmeier,* 171 Wash. 484, 18 P. (2d) 48, to be insufficient to establish joint adventure. It seems apparent that everyone concerned had a common purpose in getting Mrs. Bonney's washing done. The fact that Mrs. DeNune and Mrs. Tibbitts took their own washing with them tends to obscure the common purpose, but that fact is merely incidental. The jury was entirely warranted in believing that, if Mrs. DeNune and Mrs. Tibbitts had not had a common purpose in getting Mrs. Bonney's washing done, the trip would never have been made.

The appellant, both on the question under discussion and upon questions raised as to refusal to give instructions, leans heavily upon the following expression in the opinion in *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932:

"Necessarily, the agreement presupposes that each of the parties has an equal right to a voice in the manner of its performance, and an equal right of control over the agencies used in its performance."

It is urged that the appellant Tibbitts himself had but a limited control over the truck; that it was his duty to travel a definite route in order to pick up his fellow-workmen, and did so on a definite time schedule; hence, it is said:

"It was peculiarly impossible for the deceased to have had an equal right of control over the truck in which she was riding."

We are unable to follow this argument. It seems, upon analysis, to reduce itself to a contention that, since Tibbitts did not have entire control of the truck, it was impossible for the deceased to have had one-half control. But it would be possible for the deceased to have equal control with Tibbitts in whatever control Tibbitts actually had, whether that was complete or not. After all, the question does not depend upon what control Tibbitts legally had, but upon what control he actually assumed to exercise.

The matter of control will again be adverted to in dealing with the questions raised with respect to the court's refusal to give certain instructions. The question with which we are now dealing is not whether a joint adventure was conclusively proven, but whether there was sufficient evidence of it to make the matter of its existence or non-existence a question for the jury. The common purpose and objective were clearly shown, and we cannot say that there was no evidence of the other usual indicia of joint adventure. Indeed, upon the point most seriously questioned, we find a great deal to warrant the inference that the appellant was, in fact, a rather passive instrument in the matter, and at all times under the control of his wife and mother-in-law, who jointly planned and initiated the venture. It appears from his own evidence that he fully ratified the joint plan and performed the part which they assigned to him.

There being evidence from which the jury could find that appellant and the deceased were engaged in a joint adventure, it follows that the appellant's affirmative allegation that the deceased was his guest was not established as a matter of law. The court, therefore, did not err in denying appellant's challenge to the sufficiency of the evidence at the close of respondent's case and at the close of all the evidence, or

in denying the appellant's motion for a judgment notwithstanding the verdict.

It is urged that the trial court erred in denying appellant's alternative motion for a new trial. The specific errors alleged are that the court erred in refusing to give requested instructions 7, 8, and 10. These requested instructions were as follows:

"No. 7. If you should find in this case that the parties herein made an automobile trip together, and that in making this trip they had a common objective, in point of time and place, you are instructed if you should so find, that this fact alone would not establish joint adventure.

"No. 8. The court instructs the jury to find for the defendant in this case.

"No. 10. You are instructed that in order for the plaintiff and defendant to have been engaged in a joint venture, you must first find that there was an agreement to enter into an undertaking in the objects or purposes of which the parties to the agreement have a community of interest and a common purpose in its performance. Necessarily, such an agreement presupposes each party has an equal voice in the manner of its performance and an equal right of control over the agencies used in its performance."

The reasons why the court could not give requested instruction No. 8 have been heretofore sufficiently indicated.

Requested instruction No. 7 was properly refused. It was wholly unnecessary to instruct the members of the jury that the fact that the parties "had a common objective in point of time and place" would not "alone" establish joint adventure, in view of the fact that they were told, in an instruction given, that, in order to find that the relation existed, they must find that the parties had

". . . agreed to perform certain undertakings in the objects and purposes of which they had a com-

munity of interest, and a common purpose in its performance; that each of the parties had an equal voice in the manner of its performance, . . . [Instruction No. 8.]"

It is urged that an equal right of control is an essential element of joint adventure, and that the court omitted this element in failing to give appellant's requested instruction No. 10. The requested instruction is incomplete. It fails to point out that performance may be entrusted to one of the parties. *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932. If the instruction had been given as requested, the jury might well have believed that the fact that Tibbitts drove the truck conclusively showed that Mrs. DeNune had no voice in its control. The court instructed the jury that, in order to find that the parties were engaged in a joint adventure, they must find, among other things,

" . . . that each of the parties had an equal voice in the manner of its performance and that in carrying out the undertaking they entrusted the performance of the same to the defendant Tibbitts."

We think that, under the circumstances, the instruction was adequate.

The judgment appealed from is affirmed.

STEINERT, C. J., MAIN, HOLCOMB, and BEALS, JJ., concur.