[No. 27473.   *En Banc.*   November 17, 1939.]

KENNETH CARBONEAU, *Appellant,* v. WINFIELD PETERSON, *Respondent.*[1]

[1]Reported in 95 P. (2d) 1043.

*Clarence J. Coleman* and *Vanderveer & Bassett,* for appellant.

*Ballinger, Hutson & Boldt,* for respondent.

STEINERT, J.—Plaintiff brought an action to recover damages for personal injuries sustained by him while riding in an automobile owned and driven by defendant. The action was based on defendant's alleged negligence in operating the car. At the conclusion of plaintiff's case, in a trial before a jury, the court sustained

defendant's challenge to the sufficiency of the evidence and subsequently entered judgment of dismissal. Plaintiff has appealed.

The determinative question in the case is whether the evidence was sufficient, had it been submitted to the jury, to warrant a finding that the relation between the parties was that of joint adventure, as appellant contends, or whether, on the contrary, the evidence established, as a matter of law, that the relation was one of host and guest, as contended by respondent and as found by the court. Appellant concedes that, if he was respondent's guest, his cause of action must fail because of the statutory bar found in chapter 18, Laws of 1933, p. 145, re-enacted as chapter 189, Laws of 1937, p. 911, § 121 (Rem. Rev. Stat., Vol. 7A, § 6360-121 [P. C. § 2696-879]), commonly referred to as the "host and guest" statute.

At the time of the events which we are about to relate, appellant, Kenneth Carboneau, respondent, Winfield Peterson, and one Roy Wick, three young men living in Everett, had been intimate friends for several years. On March 27, 1937, respondent purchased a second-hand Ford roadster and, in the afternoon of that day, drove it to the home of appellant to show it to his two friends. Respondent there expressed an intention to drive the car upon a trial excursion that night, and the three young men then informally agreed that they would go to Seattle and attend a moving-picture show. It appears to have been tacitly understood by them that they would share equally the cost of the gasoline necessary for the trip; this was in accordance with their habit on other occasions when they had used either appellant's car or Wick's car.

On leaving Everett at about eight p. m., they each contributed thirty-five cents to the purchase of five gallons of gasoline. They then proceeded to Seattle,

where they attended a show, to which each paid his own admission. After the show, they drove around Seattle for about an hour and then had lunch, each paying for his own meal. They then started home and had almost reached the city limits of Everett when the car, being driven by respondent, suddenly ran off the road near a curve and struck a pole. Appellant sustained the injuries for which this action was brought.

Since the question before us relates to the sufficiency of the evidence, it is proper and necessary to refer to the testimony which appellant offered and on which he relies for a recovery.

Appellant testified, on direct examination, as follows:

"Q. Was anything said by Peterson about the expenses of the trip? A. I believe he stated that since he had purchased the car he wouldn't have very much money that evening and we'd all put in on the gas. Q. Where was that conversation had? A. I believe it was after we left Wick's house, or right at Wick's house that evening. Q. Did you agree to share the expenses? A. Yes, sir, I did. Q. How much did you contribute? A. It was about thirty-five cents. Q. You bought five gallons of gas and each of you chipped in? A. Yes, sir."

On cross-examination, he testified:

"Q. Win was proposing to take his car and take a drive somewhere, to try it out? A. Yes, sir, he was going to that night. Q. And you and Roy were going to go along for the ride, weren't you? A. Well, it was purposely for a pleasure trip. Q. I say the purpose of the ride was for Win to try his new car out and for you fellows to go along for the ride, isn't that true? A. Yes, sir. Q. And that is what you had in mind and what the purpose of this trip to Seattle was? A. Yes, sir. Q. The going to the movie, that was sort of an incidental matter? A. Well, we had thought before

we left that we'd go down and see a show. Q. Yes; but I say that was sort of incidental, or secondary, to the idea that he wanted to take his car and try it out and you fellows being his pals, would go along for the ride, is that right? A. That's right. Q. There was no business to be transacted by you at any time? A. No. Q. Or any work, or anything of that kind at all,—just purely to take an automobile ride? A. Yes, sir. Q. There was nothing said to you, nor anything said by you to Win, prior to the time that you got to the gas station about the matter of helping out on the gas, was there? A. I believe there was. We had had, it seems to me—Well, it seems to me there was a discussion of that before that. Q. That is what I want to ask you. Now, do you say that Peterson, Win Peterson, said anything to you, or that you said anything to Peterson, concerning this matter of your chipping in thirty or thirty-five cents for the gas? A. Well, he stated—I wouldn't swear to this, but he— Q. (Interposing) No, you cannot say anything you won't swear to. This is a court of law, Mr. Carboneau, and that is what we have got to confine ourselves to. What I want to know is, do you say that Win said anything to you, or that you said anything to Win at any time prior to the time you got to the gas station? A. I know there was some understanding between us before we left that we'd all chip in on the gas. Q. But my question is, are you testifying, or do you propose to testify, that Win said anything to you or you said anything to Win before you got to the gas station about the fact that you were going to chip in thirty or thirty-five cents on the gas, or any other conversation about that matter between you two? A. I think Peterson said that he wouldn't have very much money since he had bought the car that day, and he intended we'd all put in on the gas. Q. You think that was said? A. I think it was. Q. When was that said? At the gas station? A. No, before we left; when we was up at Wick's house. Q. But the plan for him to take his car and take you fellows along had been decided on before that? A. Yes, sir. Q. He had asked you to go, had he? A. Yes, sir."

Roy Wick testified on direct examination:

"Q. I wish you would tell the jury the circumstances that led up to your going to Seattle. What was said, and what arrangement, if any, was made before you left? A. Well, the three of us decided to go to Seattle on a Saturday night, and the three of us were to share the expenses, pay for the gas. Q. Was that actually discussed before you started? A. Well, we understood it before we left Everett. We all paid for the gas. Q. You talked about that, did you? A. Yes, we understood it. Q. Was any gas purchased? A. Yes. Q. How much, do you recall? A. About five gallons, I believe. Q. Did you contribute? A. Yes. Q. Did Kennie Carboneau contribute? A. Yes, sir. Q. What time did you leave Everett for Seattle? A. We left my house about eight o'clock. Q. What was the purpose of the trip,—just a pleasure trip? A. Just a pleasure trip."

On cross-examination, he testified:

"Q. You say that you understood that you were going to chip in something on the gas, is that right? A. Yes. Q. But there was no actual discussion, nothing said by Win Peterson asking you, or saying that you should do that, or you saying you would, or anything of that kind until you actually did it, was there? A. Well, I believe we had an understanding that we would do it before we left. Q. Let's get that 'understanding' business straightened out. That is what I am asking you. You don't claim, do you, Mr. Wick, that Win Peterson said anything specifically about that at all, do you? A. Well, I knew we were going to put in gas before we left Everett. THE COURT: Answer the question. You can answer that by 'yes' or 'no.' A. Yes, sir. Q. You claim that he said something about it? A. Yes, sir. Q. When did he say it? At the gas station? A. Well, before we left my house he said we were going to go to the gas station before we went to Seattle. THE COURT: He said that? THE WITNESS: Yes, sir, because there wasn't much gas in the car. THE COURT: Just a minute, did he say that? You have stated here now that 'we were going to go

to the gas station before we went to Seattle because there was not much gas.' Now, did Mr. Peterson say that to you or that in substance? THE WITNESS: Yes, sir. Q. He said that you fellows were each going to put thirty cents into the trip, is that right? A. He didn't specify no amount. Q. Well, that is what you did do, wasn't it? A. Yes. Q. When you got to the gas station you got five gallons of gas and you and Kennie put in thirty cents, or thirty-five cents? A. About that, yes. Q. Is that right? A. Yes, sir. Q. That is all of the discussion there was, just simply that he was going to put gas in, but there was no discussion of how much you were going to pay, or anything of that kind? A. No. Q. And the only thing that he actually said was that before you left he was going to stop at the gas station because he was low on gas, is that right? A. Yes. Q. Nothing else that he said? A. Not that I can recall."

Respondent, called by appellant as an adverse party, testified on direct examination:

"Q. Will you tell us just how it happened that you went on this trip,—what led up to it? Did you suggest it? A. Well, I'm not sure that I suggested it. Q. You aren't? A. No; I don't know just how it came about. Q. You made some arrangement about sharing the expenses of the trip, did you not? A. Not necessarily, no. Q. What do you mean by that? A. Well, we always share the gas, whosever car we took. Q. And you had that understanding before you went on the trip on this occasion? A. Well, I'm not sure that anything came up about it at the time. Q. You aren't sure about that? A. No. Q. As a matter of fact, the boys did contribute towards the gas? A. Yes, sir. Q. And you each paid your expenses in Seattle? A. Yes, sir."

On cross-examination by his own counsel, he testified:

"Q. Prior to your going on the trip to Seattle, did you have any contract or any agreement, or anything of that kind, concerning how the trip should be run, or

anything of that kind? A. No. Q. Were there any express statements made at any time by you or by Kennie up to the time that you got to the gas station, concerning the payment of expenses, or anything of that kind? A. I'm sure there was not. Q. By the way, how much gas did you get? A. Five gallons. Q. How much did Roy and Kennie pay of the gas? A. Well, I think we split it three ways. Q. What would that be approximately? A. About thirty-five cents."

It is appellant's contention that the undertaking, as above set forth, constituted, or might have been found by the jury to constitute, a joint adventure, as that term is used in cases arising out of automobile operations.

A proper consideration of that question necessitates a review of the cases which have engaged the attention of this court upon that subject. Though the task may entail some drudgery, we think it an opportune time to attempt it. We will refer to the decisions in their chronological order.

*Masterson v. Leonard,* 116 Wash. 551, 200 Pac. 320.

Two boys were riding on a bicycle at the time of its collision with an automobile. The bicycle belonged to the father of one of the boys and was customarily used by the son, Frank Masterson, in traversing his paper route. On the particular occasion, Frank's companion, Edward Buck, was seated in the saddle and operating the bicycle, while Frank sat in front of him on the handle bars. The purpose of the particular trip was to acquaint Edward with Frank's paper route in order that he might substitute for Frank in case of the latter's sickness. The action was brought to recover damages for injuries sustained by Frank when the bicycle collided with an automobile owned by the defendant in the action. Upon the question of joint adventure, the opinion says:

"We are of the opinion, in view of the ownership of the bicycle, the general possession of and control over it by Frank, the acquiescing by him in the temporary control over it by Edward for the purpose of conveying them both on this hazardous journey, which we think was their common enterprise or adventure, that the trial court did not err in telling the jury, in effect, that whatever negligence Edward was guilty of, in carrying out this their joint enterprise or adventure, was attributable to Frank and became, in law, his negligence. In other words, the trial judge did not err in so deciding as a matter of law, in view of the undisputed facts on that subject."

*Hurley v. Spokane,* 126 Wash. 213, 217 Pac. 1004.

A brother and sister were using their father's automobile for the purpose of going to church. The brother was driving the car. While descending a steep hill, the machine became unmanageable and skidded against a handrail dividing the street. The occupants of the car were injured and sought to recover damages from the city, upon the ground of its alleged failure to maintain a proper barrier. We held that the boy driving the car was guilty of contributory negligence as a matter of law. As to the claim of the sister, we concluded:

"But it is said that to the appellant Gertrude Hurley cannot be attributed the contributory negligence of the driver, her brother. Here, however, the record shows that she and her brother were using the car with their father's permission on a common venture, and it therefore becomes immaterial who at the time may have been at the steering wheel."

*Jensen v. Chicago, M. & St. P. R. Co.,* 133 Wash. 208, 233 Pac. 635.

A party of seven men drove from Hoquiam to Seattle to attend a prize fight. On the return trip, the automobile collided with a freight engine and, as a result,

one of the occupants of the automobile sustained injuries from which he died. The following instruction, given to the jury by the trial court, was, on appeal, approved as a correct statement of the law:

" 'If you find from the evidence that the purpose of the trip from Hoquiam to Seattle by Jensen and the other occupants of the automobile was to go there to attend a prize fight and return to Hoquiam, and that there was an understanding between them that they were to jointly bear the expenses of the trip, then you are instructed that this would make the purpose of the trip a common venture in which all of the parties has a community of interest and under those circumstances the negligence, if any, of Sonnabend, as the driver of the automobile, would be imputed to the deceased Jensen and the others in the party. . . .' "

*Martin v. Puget Sound Electric R.,* 136 Wash. 663, 241 Pac. 360.

In this case, it was held that two employees of the same master were, while hauling lumber for their common employer, engaged in a joint enterprise and that the negligence of the one was imputable to the other, preventing recovery for damages by either for the alleged negligence of a third party.

It will be observed that, in each of the four cases just referred to, the suit was not brought by one member of a joint enterprise against another member thereof, but was brought by one who, under the facts, was held to be a joint adventurer, against an independent third party.

*O'Brien v. Woldson,* 149 Wash. 192, 270 Pac. 304, 62 A. L. R. 436.

Two ladies were engaged upon a pleasure trip extending over a period of about eight days. One of them provided the automobile in which the trip was made, and her companion agreed to pay for the gas-

oline used. In the course of the trip, an accident occurred, as a result of which the lady companion was injured and subsequently brought suit for damages against the driver and her husband, the owners of the car. It was alleged and admitted by the respective parties that the relation between the two ladies was that of joint enterprise, or common venture. Without determining that question, this court stated that it would consider the case upon that premise. The opinion then laid down the rules, (1) that, when the action is brought against a third party, the negligence of one member of a joint enterprise, acting within the scope of the undertaking, will be imputed to the other, upon the theory that each member of the enterprise is a representative of the other and the acts of one are the acts of all; (2) but that, when the action is brought by one member of the enterprise against another member thereof, the doctrine of imputed negligence does not apply.

*Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932.

Two boys, members of a public school football team, were about to engage in afternoon practice when each discovered that he had left his locker key at home. One of the boys, having at his disposal an automobile parked nearby, offered to take the other boy with him, so that each might go to his own home and there obtain his own key. During the trip, the automobile collided with a stage, resulting in injuries to the driver's companion. It was held that the boy driving the automobile was guilty of contributory negligence as a matter of law. The defendant stage owner contended, on the appeal, that the negligence of the driver was imputed to the other boy, upon the theory that the two

boys were engaged in a joint adventure. The opinion in the case has become a land-mark in this jurisdiction, and is recognized as accurately designating the essentials of that relation.

As a preface to the substantive portion of the opinion, this court pointed out, by reference to *State ex rel. Ratliffe v. Superior Court,* 108 Wash. 443, 184 Pac. 348, that the authorities had not announced any very well-defined rule from which it could be determined whether the given facts or conduct of two or more persons would constitute them joint adventurers, but had rather contented themselves with the consideration of the particular facts of the case before them. In passing, we may add that the *Ratliffe* case, which arose out of a lease agreement, sums up the general holdings upon the subject as of that time, as follows:

"Generally speaking, the authorities seem to hold that a joint adventure very closely resembles a copartnership, and that the rules of law governing the latter are generally applicable to the former. It is conceded that a joint adventure creates a close and even fiduciary relationship between the parties, and that whether an instrument establishes the relationship of landlord and tenant or joint adventurers or copartners is to be ascertained from the contract."

With the view of announcing a formula which might serve as a guide in this jurisdiction for determining whether a state of facts constituted a so-called relation of joint adventure or joint enterprise, the *Rosenstrom* case declared:

"The relation, as a legal concept cognizable by the courts, must have its origin in contract.

"There must be an agreement to enter into an undertaking in the objects or purposes of which the parties to the agreement have a community of interest and a common purpose in its performance. Necessarily, the agreement presupposes that each of the parties has an equal right to a voice in the manner of its performance,

and an equal right of control over the agencies used in its performance. One or more of the parties may, of course, intrust performance to another or others, but this involves only the law of agency; his rights in the ultimate result and his liabilities for negligent or wrongful performance remain the same. The facts here shown do not bring the actors within these principles. While each found himself in the same situation when he sought to open his locker, the situation did not present a community of interest. The one had no interest, as that term is understood in the law of joint adventure, in procuring the key of the other, and in going for them, their purpose was in no sense common or joint, but rather separate and independent. Nor did the respondent have an equal right with the driver of the automobile in directing the manner in which they should proceed in executing their purposes. He was governed by the driver's will in that respect, and had only the rights any invitee has when riding in the automobile of another."

*Lloyd v. Mowery,* 158 Wash. 341, 290 Pac. 710.

Three men, friends of long standing, went on a hunting trip, in an automobile owned and driven by one of them. All contributed jointly to the expense of the trip. In the course of the journey, one of the tires of the automobile suddenly became deflated, and, in endeavoring to control the progress of the car, the driver turned his steering wheel to the right and applied the brakes. The car turned completely around and then tipped over, severely injuring one of the occupants, who subsequently brought suit for damages against the owner and driver. The opinion held, upon the authority of *O'Brien v. Woldson, supra,* and without further discussion, that the parties were engaged upon a joint adventure. It will be recalled that, in the *O'Brien* case, the relation of joint adventure was admitted by the parties and, without discussion, was so treated in the opinion.

*Sanderson v. Hartford Eastern R. Co.,* 159 Wash. 472, 294 Pac. 241.

A father, at the suggestion of his son, rode home from a camping ground in the son's automobile. This arrangement was effected in order that the father might be relieved of the burden of driving his own car and, also, that the father and son might enjoy each other's company during the trip. As a result of a collision between the son's automobile and a gasoline-driven motor car operated by a railway company, the father was injured. Upon the authority of the *Rosenstrom* case, *supra,* it was held that the father was a mere invitee of his son, and not a joint adventurer; and that, therefore, in a suit against the railroad company, any negligence of the son would not be imputeed to the father.

*Dahl v. Moore,* 161 Wash. 503, 297 Pac. 218.

Several persons were being transported by the agent of a firm, in an automobile individually owned and operated by the agent, for the purpose of interesting the several persons in the purchase of real estate owned by the firm. One of the main questions presented on the appeal was whether the relation between the parties was that of host and guest or that of joint adventure. The majority opinion, signed by five judges, pointed out the distinction between the relation of joint adventure, as defined in the *Rosenstrom* case, and that of gratuitous bailment, or of a guest being carried gratuitously, as defined in the *O'Brien* case, *supra,* and then held that, while the status of the defendant and its agent was not precisely that of a paid carrier, it was similar to it. The majority opinion did not hold that the parties were joint adventurers, but proceeded upon the theory that, whether they were "co-venturers" or not, their relation was not that of

host and guest and that, therefore, the rule of gross negligence did not apply. Four judges in a specially concurring opinion held that the relation of the parties was not one of host and guest, because the invitation to visit the property was not based on friendly association for the purpose of mutual enjoyment, but was purely a matter of business, its object being to make a sale. The same judges also held that the trip was not a joint adventure because the profit to be derived by the real estate firm and its agent from any sale to the other parties was wholly distinct from any possible profit that the latter might receive from such investment. The four judges emphatically stated that, in their opinion, the doctrine of joint adventure should be limited to those cases in which, regardless of the purpose of the undertaking, it clearly appears that the parties were actuated by a common motive in following out a plan adopted for their joint benefit, or were at least each seeking his own advantage and, to that end, were employing some common means.

*Shirley v. American Automobile Ins. Co.,* 163 Wash. 136, 300 Pac. 155.

Five persons, including four members of a family and an invitee, were riding in an automobile driven by the owner's son. While the opinion does not specifically so state, the record discloses that the parties were engaged in a day's pleasure outing at a beach. As a result of a collision between the automobile and another car, some of the members of the pleasure party were injured, and several actions for damages were brought by them against the driver of the colliding car. The son, who was driving the pleasure car, was held to have been guilty of contributory negligence, and for that reason he was not permitted to recover. The

parents, who were the owners of the automobile, were denied recovery because the driver was their agent and servant. The other member of the family was barred from recovery because, as held by this court,

"The excursion of the family during which the accident occurred was the joint enterprise of the family in which all participated, and in which each one must bear the fault and blame of the others."

The invited guest, however, was permitted to recover, on the ground that she was not engaged in a joint enterprise with the family group because she neither took part in promoting the excursion nor had any voice in controlling it, and there was no evidence that it had been planned for her benefit.

*White v. Stanley,* 169 Wash. 342, 13 P. (2d) 457.

Two men were returning from a fishing trip in an automobile owned and driven by one of them. The companion had paid for their evening meal and for the gasoline that had been purchased just before the return trip. It appears that there was no express agreement relative to the payment of expenses. The companion brought suit to recover damages for injuries sustained by him as a result of the negligent operation of the car. This court held, on the appeal, that the question of whether there was a joint adventure was, under the evidence in the case, a question of fact for the jury to decide, and not a question of law to be determined by the court. With reference to the matter of the expense of the trip, the opinion states that, while an express or implied agreement to share the expense is one of the elements constituting a joint adventure (citing the *Masterson* and *Hurley* cases, *supra*), it is not always a necessary element (citing the *Lloyd* case, *supra*).

*Colvin v. Simonson,* 170 Wash. 341, 16 P. (2d) 839.

A daughter was riding to her work in a car owned and driven by her father. This was in accordance with their usual custom. The daughter was injured as the result of a collision with an automobile owned by a third party, against whom the action was brought. It was held that the evidence was insufficient to support a finding of a joint adventure between the daughter and her father. The *Rosenstrom* case was cited, and the substantive part of the opinion was quoted with approval.

*Alexiou v. Nockas,* 171 Wash. 369, 17 P. (2d) 911.

Plaintiff's family, consisting of himself, his wife and minor child, together with defendant's brother and a fifth person, were riding with defendant in the latter's car on their way to a picnic. As a result of defendant's negligence in the operation of the car, several of its occupants were injured, and brought three actions, subsequently consolidated, against defendant to recover damages. Without any particular discussion of the question, the opinion held that the relationship between defendant and his brother was that of host and guest, but that the other plaintiffs were joint adventurers with defendant, by virtue of an agreement under which the expenses of the journey and picnic were to be borne by those plaintiffs and the defendant. The court quoted, and seemingly approved, that portion of the *Rosenstrom* opinion which stated that, in a joint adventure, the agreement presupposes that each of the parties has an equal right to a voice in the manner of its performance and an equal right of control over the agencies used in the performance. It was stated, however, that the language quoted from the *Rosenstrom* case did not mean that a driver's co-adventurers

are expected to control the operation of the car or to interfere with its movements.

*Eubanks v. Kielsmeier,* 171 Wash. 484, 18 P. (2d) 48.

Three ladies and a minor child made a trip to a distant city in an automobile which one of the ladies and her husband owned and which was driven on the particular occasion by the wife. The purpose of the trip was to enable each of the ladies to do some shopping and, together, to attend a luncheon given by a mutual friend. The two accompanying ladies apparently had agreed between themselves to pay for the gasoline and oil used on the occasion, and at the beginning of the trip they suggested to the driver that they proceed to a gasoline station and procure the necessary supplies. The offer, however, was declined because the car had already been serviced. On the return trip, two of the companion occupants were injured through the alleged negligence of the driver, and suits were brought against her and her husband. Shortly after the accident, one of the injured parties sent a dollar to the defendant husband to pay for the gasoline and oil used. The money was later tendered back to the sender, but she refused to accept it.

In holding that there was no joint adventure, we followed the rule announced in the *Rosenstrom* case. With reference to the purchase, or offer to purchase, the gasoline and oil, we said that, standing alone, it would not establish a joint adventure, since it would, or might, have been merely an expression of courtesy and appreciation that a guest often manifests; that the purchase of a trifling amount of gasoline, in the absence of an agreement by the parties to share the expenses of the trip, does not *ipso facto* convert the amenities of friendly host into the obligations of a joint adventurer; and that, while such a purchase may be an element

to be considered as evidence of an agreement, it does not of itself constitute a binding contract where there has been no meeting of the minds on the subject. The opinion further emphasizes that, even though the parties may have a common objective in point of time or place, there must, in order to constitute a joint adventure, be a community of interest or an engagement to effect a common purpose; and that, as a legal concept, a joint adventure has its origin in contract, presupposing that each of the parties has an equal right to a voice in the manner of its performance and an equal right of control over the agencies used in the performance.

*Bates v. Tirk,* 177 Wash. 286, 31 P. (2d) 525.

The owner of a car gave his two daughters permission to use it to go in company with a boy friend to a football game. It was understood that the boy was to drive the car. The boy replenished the car with two gallons of gasoline. On the return trip, the car collided with another automobile and one of the girls was injured. In an action brought against the driver of the other automobile, it was held that the three young people were engaged in a joint adventure which continued throughout the trip for which the father's permission was granted, and that the negligence of the driver was imputed to the other occupants of the car. The opinion reaffirmed the principles announced in the *Rosenstrom* case and held that, to create a joint adventure, there must be an agreement to enter into an undertaking, in the objects or purposes of which the parties to the agreement have a community of interest and a common purpose in its performance, and an equal right of control over the agencies used in its performance, although one of them may intrust its performance to another.

*Pickering v. Stearns,* 182 Wash. 234, 46 P. (2d) 394.

Two boys and three girl companions, including the plaintiff, were using the defendant's automobile to attend a school picnic and later a dance. One of the boys, who was defendant's son, had agreed to provide the automobile, and the other had contributed five gallons of gasoline toward the expense of the journey. The plaintiff, who was injured on the trip, had been invited by the second boy. In its opinion, this court stated that the two boys were joint adventurers, but held that the injured girl plaintiff was merely an invited guest, inasmuch as she was neither a student of the particular school nor a contributor to the expense of the journey.

*Forman v. Shields,* 183 Wash. 333, 48 P. (2d) 599.

A father gave his consent to the use of his car by his son and four of his son's companions to attend a school picnic which required that the car be decorated with streamers. Each of the boys contributed ten cents towards the decorations, and it was agreed that three of them should each buy a gallon of gasoline. During the course of the trip, one of the boys was injured through the negligence of the driver. After quoting at length from the *Rosenstrom* case, we held that the facts above narrated were sufficient to warrant the jury in finding that the relationship of the group of boys was that of joint adventure.

*Bennett v. King County,* 188 Wash. 196, 61 P. (2d) 1316.

A boy was being transported to his work in a car owned by his brother. In the course of the trip, the boy lost his life in a flood which swept over a bridge across which the car was proceeding. It was held that there was no common or joint adventure existing be-

tween the boy and his brother, for the reason that the boy had no right whatever to direct or control the conduct of his brother in driving the car. A statement from 45 C. J. 1020, was quoted as stating the applicable rule, as follows:

" 'The great weight of authority is to the effect that to constitute a common or joint purpose within the rule as to imputed negligence there should be a joint interest or community of interest in the object or purposes of the undertaking and an equal right to direct and govern the movements and conduct of each other in respect thereto. Each must have some voice and right to be heard in its control and management, and the mere fact that two persons are doing something together does not make each chargeable with the negligence of the other, nor does the fact that they have certain plans in common.' "

*Potter v. Jaurez,* 189 Wash. 476, 66 P. (2d) 290.

Plaintiff, desiring to make a trip on a particular day to the Skagit project, which was being developed by the city of Seattle, sought means of transportation. She was introduced to the defendants, who owned an automobile and who intended to visit the project on that same day. By the terms of the agreement between the parties, plaintiff was to pay her share of the expense of the journey, and during the return trip, and after the occurrence of the accident in which plaintiff was injured, she paid defendant's wife the sum of one dollar. It was held that, under these facts, if believed by the jury, the relation borne by the parties was not one of host and guest within the meaning of Rem. Rev. Stat. (Sup.), § 6297-1 (Laws of 1933, chapter 18, p. 145), barring recovery to invited guests. Whether the relation was that of joint adventurer or carrier and passenger, the court was not required to, and did not, decide.

*Duvall v. Pioneer Sand & Gravel Co.*, 191 Wash. 417, 71 P. (2d) 567.

Six ladies, belonging to the same fraternal order and members of a degree team of a constituent lodge of the order, planned to attend a lodge conclave in a distant city, where they were to confer a degree in which it was essential for all of them to be present and participate. They had been practicing together for about a week prior to the occasion. At a practice meeting, one of the ladies arranged to take the others in her car to the conclave. During the course of the trip, one of the occupants of the car was injured as the result of a collision between the car and a truck. There was evidence of negligence on the part of the drivers of both vehicles. One of the vital questions in the case was whether the ladies were engaged in a joint adventure. This court again adverted to the *Rosenstrom* case as parental authority for the elements necessary to establish the relation, quoting the provision to which we have already referred. The opinion then stated that, ordinarily, an agreement to share expenses is an element of joint adventure, but that it is not essential *(White v. Stanley, supra).* Upon the facts above set forth, the court concluded that all the elements of joint adventure, as enumerated in the *Rosenstrom* case, were present. With respect to the element of equal right of control of the agency of performance, that element, the court said, might be inferred from the purpose of the trip and the plaintiff's connection with it as a member of the degree team.

*DeNune v. Tibbitts,* 192 Wash. 279, 73 P. (2d) 521.

The parties to the action were relatives. Mrs. De-Nune was the mother of Mrs. Tibbitts and Mrs. Bonney. Mr. Tibbitts owned a truck which he regularly used, according to time schedule, upon W. P. A. work. Mrs.

Bonney owned a washing machine. Neither Mrs. De-Nune nor Mrs. Tibbitts had such an appliance. Upon the occasion in question, at which Mrs. DeNune, Mr. and Mrs. Tibbitts, and Mrs. Bonney were present, these parties agreed among themselves that Mrs. DeNune and Mrs. Tibbitts would each collect her own linen and take it to the Bonney residence, in the Tibbitts' truck, and there do their own washing, and also that of Mrs. Bonney, in the latter's washing machine. The agreement was inspired by the fact that Mrs. Bonney was sick at the time and could not do her laundering. The party started upon the journey in Tibbitts' truck. On the way to the agreed destination, the truck, operated by Mr. Tibbitts, collided with a street car, and Mrs. DeNune was critically injured. Suit was brought against Tibbitts, whose negligence was not questioned. The principal issue in the case was whether Mrs. DeNune was, as a matter of law, the guest of Tibbitts. We held that, under the evidence, her legal status, whether that of a guest or that of a joint adventurer, or that of some other kind, was a question of fact for the jury to determine. Specifically, with reference to the issue of joint adventure, we held that there was substantial evidence of a joint plan among the parties, a common purpose to be fulfilled by them, and an equal right of control over the truck during the trip, making that issue one of fact, rather than one of law.

*Keisel v. Bredick,* 192 Wash. 665, 74 P. (2d) 473.

Eleven men, employed as a unit upon a government project, entered into a verbal agreement with each other for week-end transportation to a common point, where they were to disperse, each to pursue his own course to his home. Two of the men were to provide their automobiles and advance the expense of opera-

tion, and upon the conclusion of the trip the expense was to be divided among those who rode in the respective automobiles. Upon the question of joint adventure, this court, after reciting the elements of that relationship as set forth in the *Rosenstrom* case, held that the facts presented a question for the jury on that issue.

*Syverson v. Berg,* 194 Wash. 86, 77 P. (2d) 382.

A college alumnus invited a young lady to accompany him on an automobile trip from Tacoma to Pullman to attend a formal ball. According to the arrangement, the mother of the girl was to accompany them as chaperon. The plan was that the young man should have lunch at the home of the mother, after which the three persons were to start upon the journey; en route, they were to stop at the home of the girl's grandmother, where they would spend the night and have breakfast the following morning. These arrangements were made for the purpose of reducing the expenses of the trip. On the way, an accident occurred through the negligent driving of the young man, and, as a result, the mother of the girl was injured. It was held that the relation between the mother and the young man was that of host and guest, and not one of joint adventure. The opinion defined the trip as purely social, from which the driver of the car neither expected nor received any monetary or material gain or business advantage.

*Lewis v. Bertero,* 194 Wash. 186, 77 P. (2d) 786.

Employees on a job arranged for their daily transportation to and from work by means of an automobile owned and operated by one of them, for which the others paid the owner the sum of twenty-five cents a day. It was held that the relation existing between

the owner and the others was that of carrier and passenger, distinguishing the case from those in which a group of persons make a single or special trip in an automobile owned by one of them under an agreement by which all agree to share the expenses.

*Meacham v. Gjarde,* 194 Wash. 526, 78 P. (2d) 605.

Two ladies made arrangements to drive to a distant city to visit their respective relatives. One of the ladies, the defendant, was to drive her car, and the other was to furnish the lunch and the gasoline for the trip. There was evidence of negligence on the part of the driver as the result of which the accompanying lady was injured. Under the authority of the *Hurley, Lloyd, Bates, Duvall,* and *DeNune* cases, *supra,* we held that the evidence made an issue of fact upon the question of joint adventure.

*Petersen v. Ingersoll-Rand Co.,* 194 Wash. 584, 78 P. (2d) 1083.

Two men, a roadmaster and an inventory clerk, employed by a railroad company, were using one of the company's speeders while making an inventory of the material along the company's right of way. It was held that the two men were engaged in a common purpose or a joint enterprise. The holding was rested on the *Martin* and *Rosenstrom* cases, *supra.*

*Lampe v. Tyrell,* 200 Wash. 589, 94 P. (2d) 193.

A group of school girls, with two chaperons, were spending a week-end at a lake. One afternoon, a number of boys visited them. One of the boys had his father's automobile. During the course of the afternoon, the young people decided to have a marshmallow roast in the evening. After some general discussion, it was agreed that two of the boys and three of the girls should accompany the boy with the auto-

mobile and go into town for the purpose of obtaining the necessary supplies. A collection for that purpose was taken, and there was evidence in the case that some of the money was to be used to buy gasoline for the automobile. In the course of the trip, an accident occurred as the result of the negligence of the boy who was driving the car, and the three girls were injured. Actions were brought against the driver and his parents, the owners of the car. One of the questions in the case was whether the relation between the driver and the injured girls was that of host and guest or that of joint adventure. We held that the relation was that of host and guest. The opinion cites nearly all of the cases above referred to and analyzes many of them. The *Rosenstrom* case is again affirmed, and the principles therein announced are restated with more particularity. We quote what appears to be the heart of the opinion:

"While it may be that, in some of the cases, such as *Hurley v. Spokane,* and *Duvall v. Pioneer Sand & Gravel Co., supra,* there does not seem to be much in the testimony upon which to base any contractual relation, still we are of the opinion it has not been the intention of this court to depart from the rule announced in the *Rosenstrom* case, and we again affirm the rule there announced, and now state that the relationship of joint adventurer must be founded on contract, and that, before such relationship can be established, it must appear from the testimony that there was an agreement between the parties to enter into an undertaking, in the objects or purposes of which the parties to the agreement have a community of interest. Such an agreement presupposes that each of the parties has an equal right to a voice in the manner of its performance and an equal right of control over the agencies used in its performance. We cannot believe that this status can be established by mere loose statements, with no thought of any contractual obligation, or that it can be formed by the

mere purchasing of some item, such as gas or oil, there having been no previous agreement or understanding so to do. Neither do we believe that a common purpose is sufficient in itself to form this relationship, there having been no previous agreement to carry out the common purpose. The relationship of joint adventurer is a serious matter, and it should not be held that the parties thereto have assumed the liabilities attached to such an undertaking, without some definite indication of their intention so to do.

"If this relationship is to find any basis in contract, then certainly there must be present some of the elements of a contract before it can be contended such a relationship has been established. It is so obvious as to be almost inescapable that there must be an agreement in order that at least two elements necessary to this relationship be established, or implied therefrom. We know, as a practical proposition, that when several parties are riding in a car, regardless of what their purpose may be, the owner of the car usually drives and controls the car. Apparently, the courts have recognized this fact; hence, the only theory on which one not such a driver or operator may be said to have an equal voice in the manner of its performance and an equal right of control over the car, is that each is engaged in the performance of the plans which *all have agreed upon,* and which are as personal to one as to the other. Surely, before it can be said that parties other than the owner of a car have an equal voice in its operation and control, there must be some contribution on their part to the enterprise, which will be of mutual benefit to the owner of the car, as well as to themselves, and which will constitute a consideration for their right to an equal voice in the manner of performance and an equal right of control over the car."

The analysis of the foregoing twenty-seven cases leads to at least one irrefutable conclusion, namely, that the case of *Rosenstrom v. North Bend Stage Line, supra,* has pronounced, and is, the law in this state with respect to joint adventures wherein the use of

automobiles is involved. Although, from what appears in the opinions in some of the cases, it may be difficult to demonstrate that the rule has at all times been consistently applied in its full extent and vigor, there can be no doubt of the prevalence and fixity of the rule itself. Its recurrent citation has made it a rubric upon this branch of the law.

Briefly stated, a joint adventure arises out of, and must have its origin in, a contract, express or implied, in which the parties thereto agree to enter into an undertaking in the performance of which they have a common purpose and in the objects or purposes of which they have a community of interest, and, further, a contract in which each of the parties has an equal right to a voice in the manner of its performance and an equal right of control over the agencies used in the performance. Thus, we note (1) a contract, (2) a common purpose, (3) a community of interest, (4) equal right to a voice, accompanied by an equal right of control.

The *sine qua non* of the relationship is a contract, whether it be express or implied. As a legal concept, a joint adventure is not a status created or imposed by law, but is a relationship voluntarily assumed and arising wholly *ex contractu*. The essence of a contract is that it binds the parties who enter into it and, when made, obligates them to perform it, and failure of any of them to perform constitutes, in law, a breach of contract. A mere agreement, or concord of minds, to accompany one another upon an excursion, but without an intent to enter into mutually binding obligations, is not sufficient to create the relationship of joint adventure.

The purpose of the enterprise, whether it be for business, pleasure, or for some other objective, must be common to both, or all, parties, and not separate,

distinct, and independent. The *Rosenstrom* case is a good single illustration of the lack of this essential. In that case, the purpose of each of the boys was to get his own key. They did not have a common objective.

The cases hereinabove referred to present a variety of possible objectives or purposes, and from them it may be deduced that it is not always easy to say just what the precise purpose of the particular enterprise is; for, obviously, there may be many purposes, one or more of which may, or may not, be common to both parties. It is, therefore, important in a given case to determine first what the purpose, or purposes, of each participant is, and then to ascertain whether there is a common objective in the undertaking. However, even if it can be said that there is a common purpose, yet if it is merely for social companionship, no joint adventure arises, since persons engaging in such an undertaking do not intend to enter into mutually binding and enforceable covenants. *Syverson v. Berg*, 194 Wash. 86, 77 P. (2d) 382; *Lampe v. Tyrell*, 200 Wash. 589, 94 P. (2d) 193.

Next, there must be a community of interest in the performance of the purpose. While this element is usually connected, and often identified, with the purpose to be accomplished, it is, nevertheless, a distinct factor. The parties may have a common objective or purpose, and still a community of interest may be lacking. For instance, two parties may be engaged in the performance of a purpose or object, which may be for the sole interest or advantage of one, and from which the other is to derive no benefit whatever, or the interest of the one may be different and distinct from that of the other; in either of such cases, there would not be a joint adventure. The term "community of interest," as applied to the relation of joint adventure, means an interest common to both parties, that

is, a mixture or identity of interest in a venture in which each and all are reciprocally concerned and from which each and all derive a material benefit and sustain a mutual responsibility.

The relationship must possess the element of equal right to a voice in the manner of performance of the enterprise. By this is meant that each of the parties has an equal right in the management and conduct of the undertaking, and that each may equally govern upon the subject of how, when, and where the agreement shall be performed. If the will or pleasure of one party is to control the others in these respects, there is no joint adventure.

As a corollary to the preceding requirement, it follows that each party must have an equal right of control over the agencies used. This, of course, does not mean that each has the right to interfere at will with the driver to whom the duty of operating an automobile has previously been intrusted. It does mean, however, that each has an equal right of general supervision over the instrumentality, equal authority in directing how the instrumentality is to be used in the performance of the enterprise, and, likewise, equal responsibility for the manner of such performance.

These various elements to which we have referred may not always be fully expressed in a particular contract or agreement, and most often some of them are not, but the circumstances revealed must be sufficient to support an implication that they are part of the contract. If the circumstances do not fairly support such inference, then there is no joint adventure.

Looking through these principles, as we have attempted to elucidate them, to the facts as mirrored by the evidence in the case before us, we are convinced that the relationship between the parties was not one of joint adventure, but one of host and guest.

There was no binding contract which the parties were mutually obligated to perform or which, if not performed, would have been considered, in law, as a breach of contract. It was merely an agreement or arrangement from which any of the parties could have withdrawn at any time.

The petty contribution toward the purchase of gasoline was not, of itself, sufficient to elevate an informal arrangement into the dignity of a contract. While an agreement to share expenses of an excursion is of evidentiary value in determining whether there was, in fact and in law, a contract, it is not controlling of the question and, in many instances, amounts to nothing more than a gesture of good will or social companionship.

The purpose of the instant trip was either merely to try out the car or else was one of social companionship. If it was to try out the car, then there was no community of interest between the parties, for respondent alone would have been subserved by that. If the purpose of the trip was for social companionship, the essential element of intention to enter into mutually binding covenants would be lacking. The attendance upon the picture show was merely incidental to the trip; it was in no sense its object or purpose.

To say that appellant had any right of control over the automobile, or any authority to direct how it should be operated, is not only contrary to the facts, but inconsistent with every inference based on human experience.

The evidence simply presents a case of a purchaser of a car who, with the intention of trying it out, invited a number of his friends to accompany him on a drive, and of an acceptance by the invitees, upon an informal understanding that they would all attend a

show, with the added circumstance of a trivial contribution by them of gasoline necessary for the trip.

We think the trial court was right in declaring, as a matter of law, that the relationship was one of host and guest.

The judgment is affirmed.

BEALS, ROBINSON, SIMPSON, and JEFFERS, JJ., concur.

GERAGHTY, J. (dissenting)—Upon the evidence in this case, viewing it, as we must, in the light most favorable to the appellant, I am not persuaded that it can be held, as a matter of law, that the parties on the trip to Seattle were not joint adventurers. The question was for the jury to determine under proper instructions from the court. *Hurley v. Spokane,* 126 Wash. 213, 217 Pac. 1004; *Jensen v. Chicago, M. & St. P. R. Co.,* 133 Wash. 208, 233 Pac. 635; *O'Brien v. Woldson,* 149 Wash. 192, 270 Pac. 304, 62 A. L. R. 436; *White v. Stanley,* 169 Wash. 342, 13 P. (2d) 457; *Alexiou v. Nockas,* 171 Wash. 369, 17 P. (2d) 911; *Bates v. Tirk,* 177 Wash. 286, 31 P. (2d) 525; *Pickering v. Stearns,* 182 Wash. 234, 46 P. (2d) 394; *Forman v. Shields,* 183 Wash. 333, 48 P. (2d) 599; *Meacham v. Gjarde,* 194 Wash. 526, 78 P. (2d) 605.

While the parties may not have entered into a formal agreement to share the expenses of the trip, such an agreement may be inferred from their actions. The small amounts contributed by the parties to the common fund, for the purchase of gas, is not determinative of the question. The contributions were adequate to the accomplishment of their undertaking.

Stress is laid upon the absence of any agreement or understanding with respect to joint control in the movement and operation of the car. Of course, they could not all three drive; one of them had to perform

that operation, and it seems to have been tacitly assigned to the respondent.

Believing that the judgment of the trial court should be reversed, I am constrained to dissent from the majority opinion.

BLAKE, C. J., MAIN, and MILLARD, JJ., concur with GERAGHTY, J.