[No. 27710. Department One. April 1, 1940.]

O. M. MOEN, *Appellant,* v. ZURICH GENERAL ACCIDENT AND LIABILITY INSURANCE COMPANY, LTD., *Respondent.*[1]

[1]Reported in 101 P. (2d) 323.

348

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for appellant.

*Poe, Falknor, Emory & Howe,* for respondent.

SIMPSON, J.—Plaintiff instituted action to recover from defendant sums of money his assignor, P. F. Collier & Son Corporation, had been compelled to pay as the result of litigation concerning an automobile accident.

We briefly state the pertinent portions of the com-

plaint as follows: That November 19, 1933, defendant insurance company issued to P. F. Collier & Son Corporation a policy of liability insurance, by the terms of which it insured P. F. Collier & Son Corporation against loss sustained by it as the result of damage caused by the operation of automobiles owned, operated, or hired by its employees.

Section five of the complaint reads:

"That on the 20th day of October, 1934, one C. H. Pope and one F. D. Floyd, were acting for and on behalf of said P. F. Collier & Son Corporation as its employees, servants and agents; that in the scope of said employment and in the furtherance of the business of said P. F. Collier & Son Corporation, an automobile owned by said C. H. Pope and being operated by said C. H. Pope and F. D. Floyd, was being used in the business of said P. F. Collier & Son Corporation. That on said 20th day of October, 1934, while said automobile was being operated by said Pope and Floyd in the business of said P. F. Collier & Son Corporation, one Frances G. Carlson was riding in said automobile and at said time was engaged in a joint enterprise or joint venture with the said Pope and Floyd. *That the said Frances G. Carlson on the 20th day of October, 1934, entered into an oral agreement with the said Pope and Floyd whereby the said Frances G. Carlson did contribute to and pay to Pope and Floyd a portion of the operating expenses of the above referred to automobile in consideration of receiving transportation in said car from Wenatchee to Seattle. That the purpose of said agreement was to obtain transportation to Seattle for all parties referred to at the lowest possible expense.* That pursuant to the above referred to agreement Frances G. Carlson did ride in said car with the said Pope and Floyd and while so riding and while the trip was being made the accident hereinafter mentioned occurred."

It was further alleged that the accident occurred as a direct result of the combined negligence of Pope and Floyd while acting in the course of their usual employ-

ment with the insured; that it resulted in injuries to Frances G. Carlson, who brought an action to recover damages against P. F. Collier & Son Corporation; that the defense of the action was tendered to defendant here, but that it refused the defense of that action; that the action resulted in a judgment against P. F. Collier & Son Corporation in a large amount. The contract sued upon was made a part of the complaint.

Allegation was then made that the cause of action in the present case had been assigned to plaintiff.

Defendant demurred to the complaint upon the ground, among others, that it did not state facts sufficient to constitute a cause of action. The court sustained the demurrer. Plaintiff elected to stand upon his complaint, and the action was dismissed.

Without conceding that the mere showing of a joint adventure would entitle appellant to recovery under the terms of the policy, respondent contends that appellant has failed to allege facts sufficient to show that a joint adventure relationship existed between Mrs. Carlson and Pope and Floyd. Appellant, who assumes that the existence of joint adventure is vital to his cause of action, controverts the position taken by respondent on this issue. Thus, the question presented is: Does a contract of joint adventure result when one person pays to another a portion of the expense of a journey, for the sole purpose of making the trip "at the lowest possible expense" to the parties concerned?

The allegation that "Frances G. Carlson was riding in said automobile and at said time was engaged in a joint enterprise or joint venture with the said Pope or Floyd" is a conclusion of law, and adds nothing to the allegations upon which appellant must rely in order to establish the existence of a joint enterprise. *Hamp v. Universal Auto Co.*, 173 Wash. 585, 24 P. (2d) 77.

■ The essential elements of a joint adventure are, first, a contract, second, a common purpose, third, a community of interest, and fourth, an equal right to a voice, accompanied by an equal right of control. *Carboneau v. Peterson,* 1 Wn. (2d) 347, 95 P. (2d) 1043.

It is manifest that, in order to state a cause of action based upon joint adventure, the complaint must allege facts which present the existence of each of these elements.

The allegations referring to the agreement may be found in the language which we have italicized in setting out the contents of paragraph five of the complaint. Appellant urges that the first requirement, the existence of a contract, is satisfied by the allegation of the oral agreement to pay a portion of the expenses of the trip in consideration for receiving transportation to Seattle; that the "community of interest" among the three persons was to get to their destination; and that their "common purpose" was to get there as cheaply as possible.

■ After reading and considering together the several allegations pertinent to this issue, we are unable to find any statement which shows that the parties had a common purpose and community of interest which would meet the following definition in *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932:

"There must be an agreement to enter into an undertaking in the objects or purposes of which the parties to the agreement have a community of interest and a common purpose in its performance. Necessarily, the agreement presupposes that each of the parties has an equal right to a voice in the manner of its performance, and an equal right of control over the agencies used in its performance. One or more of the parties may, of course, intrust performance to another or others, but

this involves only the law of agency; his rights in the ultimate result and his liabilities for negligent or wrongful performance remain the same. The facts here shown do not bring the actors within these principles. While each found himself in the same situation when he sought to open his locker, the situation did not present a community of interest. The one had no interest, as that term is understood in the law of joint adventure, in procuring the key of the other, and in going for them, their purpose was in no sense common or joint, but rather separate and independent."

This definition has been approved in *Lampe v. Tyrell,* 200 Wash. 589, 94 P. (2d) 193, and *Carboneau v. Peterson, supra.*

The complaint does not disclose the purpose which any of the people had in planning their trip to Seattle. Each may have had an entirely different and independent reason in so travelling. Their final destinations may have been equally diverse. The reason for the Seattle trip is not mentioned; only the purpose of making the payment to Pope and Floyd is set out in the complaint.

The payment of a portion of the expense of a journey does not of itself prove an agreement of joint venture. It is only evidence which may be considered in conjunction with other evidence in order to determine whether the parties had entered into a contract of this character. *White v. Stanley,* 169 Wash. 342, 13 P. (2d) 457; *Carboneau v. Peterson, supra.*

██ This court has many times stressed the necessity of joint control as one of the essentials of a contract of joint enterprise. *Rosenstrom v. North Bend Stage Line, supra; Lampe v. Tyrell, supra; Carboneau v. Peterson, supra.*

It is true that, in the *Carboneau* case, we recognized as not necessarily fatal to the existence of a contract of joint adventure the fact that some one or more of the

four elements might be imperfectly articulated in the overt expression of the agreement between the parties. This language, however, was carefully qualified:

". . . but the circumstances revealed must be sufficient to support an implication that they are part of the contract. If the circumstances do not fairly support such inference, then there is no joint adventure."

We are also aware of the universal rule that a demurrer admits all intendments and inferences that may be fairly and reasonably drawn from the allegations of the pleading. *Hamp v. Universal Auto Co., supra;* 1 Bancroft's Code Pleading, Practice and Remedies (10 Yr. Supp.), 93, § 172.

In *Puget Mill Co. v. Duecy,* 1 Wn. (2d) 421, 96 P. (2d) 571, the question of what inferences might properly be drawn from the allegations of the complaint was squarely raised. The following statement in that case of the applicable legal principles is pertinent to the question now before us, and affords support for the position which we take.

"Inasmuch as a pleading is construed on demurrer to allege all the facts that can be implied by fair and reasonable intendment from the facts expressly stated —a statement of a necessary substantial fact which has been omitted can not be read into a pleading—it follows that there must be sufficient facts stated to furnish a basis for the implication or inference. Only inferences that logically and necessarily follow from the facts pleaded are carried into the pleadings. A fact is not well pleaded when it is to be inferred only as a conclusion from other facts stated which are not inconsistent with an opposite conclusion. 49 C. J. 112."

In the complaint in the instant case, the facts alleged show only that Mrs. Carlson advanced money which entitled her to transportation to Seattle in the automobile driven by Pope and Floyd, and that the three of them were interested in getting there with a

minimum of expense. While not necessarily inconsistent with the existence of an agreement of joint enterprise, these facts alone establish no more than that Mrs. Carlson was a passenger of a private carrier under a contract of carriage for hire. There is nothing contained in the allegations of the complaint from which it logically and necessarily follows that she was entitled to exercise control in the selection of the route which they were to follow or the manner in which the car was to be operated, that she delegated her rights in these matters to the two men, or that she assumed equal responsibility with them for the manner in which the enterprise was to be performed. The purpose alleged "to obtain cheap transportation for all concerned" adds nothing in this respect; it is simply descriptive of the purpose of the contract into which they had already entered.

Appellant calls our attention to *Keisel v. Bredick*, 192 Wash. 665, 74 P. (2d) 473, and argues that the facts present there and the court's holding make it controlling of the case at bar. While some phases of the cases are alike, a reading of the facts set out in the former case discloses a marked difference in so far as the whole contract was concerned. There, the parties talked over the question of traveling to their homes in Bremerton at some length, decided upon the manner of traveling, and had two automobiles brought for transportation purposes to Bremerton and return.

In the instant case, the facts alleged show only the payment of money advanced by Mrs. Carlson for which she was entitled to be transported in the automobile of Pope and Floyd to the city of Seattle. The facts in the two cases are dissimilar, and the former has no application to the one under consideration.

We hold that the facts alleged in the complaint do not show that Mrs. Carlson, Pope, and Floyd entered

into an agreement constituting a contract of joint adventure.

The judgment is affirmed.

MAIN and ROBINSON, JJ., concur.

BLAKE, C. J., and MILLARD, J. (concurring in the result)—In the case of *Carlson v. Collier & Son Corp.*, 190 Wash. 301, 67 P. (2d) 842, we held that Mrs. Carlson, Pope, and Floyd were not joint adventurers. While that decision is not *res judicata* in this case, it is decisive of the issue unless overruled. We concur in the result.

